**UNITED STATES v. RIDGELAND CREAM-
ERY CO. (QUILLING et al.,
Intervenors).**

No. 313.

District Court, W. D. Wisconsin.

Oct. 26, 1942.

John J. Boyle, U. S. Atty., of Madison, Wis., and G. Osmond Hyde, Senior Atty., U. S. Department of Agriculture, of Washington, D. C., for plaintiff.

Myer H. Gladstone, Ralph J. Gutgsell, and George F. Callaghan, all of Chicago, Ill., for defendant.

STONE, District Judge.

This cause having come on for trial before the Court without a jury on October 6, 1942, and the Court having heard and considered all of the evidence submitted by the parties hereto, and having heard the arguments of counsel for the respective parties, and being fully advised in the premises, now makes its Findings of Fact and Conclusions of Law as follows:

### Findings of Fact.

1. Order No. 41, Order Regulating the Handling of Milk in the Chicago, Illinois, Marketing Area, was issued on August 28, 1939, by the Secretary of Agriculture of the United States, in accordance with the provisions of the Agricultural Marketing Agreement Act of 1937, 7 U.S.C.A. § 601 et seq., and became effective September 1, 1939.

2. Order No. 41, as Amended, Order Regulating the Handling of Milk in the Chicago, Illinois, Marketing Area, was issued on June 21, 1940, by the Secretary of Agriculture of the United States, in accordance with the provisions of the Agricultural Marketing Agreement Act of 1937, and became effective July 1, 1940.

3. Order No. 41, as Amended, Order Regulating the Handling of Milk in the Chicago, Illinois, Marketing Area, was issued on June 27, 1941, by the Secretary of Agriculture of the United States, in accordance with the provisions of the Agricultural Marketing Agreement Act of 1937, and became effective July 1, 1941.

4. Amendment No. 1 to Order No. 41, As Amended, Order Regulating the Handling of Milk in the Chicago, Illinois, Marketing Area, was issued on August 29, 1941, by the Secretary of Agriculture of the United States, in accordance with the

provisions of the Agricultural Marketing Agreement Act of 1937, and became effective September 6, 1941.

5. The defendant, Ridgeland Creamery Company, is a corporation organized and existing under the laws of the State of Wisconsin, with its office and principal place of business at Ridgeland, Dunn County, Wisconsin.

6. The defendant, Ridgeland Creamery Company, since prior to the effective date of Order No. 41, as originally issued, has been engaged continuously in the business of purchasing, receiving, processing, selling, distributing and handling milk in interstate commerce in the Chicago, Illinois, Marketing Area, and is a handler of milk within the meaning of Section 8c(1) of the Agricultural Marketing Agreement Act of 1937, and Section 941.1(a) (4) of Order No. 41, as originally issued, and Section 941.1(a) (5) of Order No. 41, as subsequently amended.

7. The Secretary of Agriculture of the United States found and on August 30, 1939, proclaimed the period August, 1919–July, 1929, to be the base period to be used in determining the purchasing power of milk sold in the Chicago, Illinois, Marketing Area.

8. Order No. 41, as originally issued and subsequently amended, and the Marketing Agreement for Evaporated Milk Industry, executed by the Secretary of Agriculture of the United States on May 31, 1935, do not regulate milk produced for the same purposes, nor milk produced of the same grade and quality, and any difference between the prices fixed in Order No. 41, as originally issued and subsequently amended, and the prices fixed by the said Marketing Agreement for Evaporated Milk Industry is immaterial and irrelevant and have no bearing on this case.

9. The minimum prices for milk utilized as Class I milk and Class II milk set forth in Order No. 41, as originally issued and subsequently amended, are based upon a premium to be paid to producers in addition to the minimum prices fixed by the Marketing Agreement for Evaporated Milk Industry issued by the Secretary of Agriculture of the United States on May 31, 1935, for milk used for the production of evaporated milk.

10. There is only one formula in Section 1 of Article VI of the Marketing Agreement for Evaporated Milk Industry issued by the Secretary of Agriculture of the United States on May 31, 1935, fixing the minimum price to be paid to producers for milk used for the production of evaporated milk.

11. The defendant filed with the Market Administrator its monthly reports showing receipts of milk from producers and the utilization thereof for each and every delivery period commencing May 1, 1941, and ending August 31, 1942, as required by Order No. 41, as amended.

12. The Market Administrator made the computations required to be made by him by the provisions of Order No. 41, as amended, with respect to the reports referred to in paragraph 11 hereof, and rendered the defendant a transcript of its account with the producer-settlement fund for each and every delivery period commencing May 1, 1941, and ending August 31, 1942, within the time required by Order No. 41, as amended.

13. The defendant, prior to the commencement of this action, never protested or challenged the method or accuracy of any of the computations made by the Market Administrator with respect to its account with the producer-settlement fund as based upon its own reports, nor has the defendant petitioned the Secretary of Agriculture for an administrative review thereof.

14. The defendant has failed and refused to pay to the Market Administrator the amount it owes to the Market Administrator for the producer-settlement fund on the basis of its filed reports for each and every delivery period commencing May 1, 1941, and ending August 31, 1942, with the exception of the amount thus due for the monthly delivery period May 1–30, 1942, and there is now due and owing from the defendant to the Market Administrator for the producer-settlement fund, on the basis of the reports filed with the Market Administrator by the defendant, the total sum of $7,913.73.

15. The defendant, during each and every month commencing August 1, 1940, and ending June 30, 1942, in its reports to the Market Administrator, reported sales to the Service Dairy Products, Inc., of Chicago, Illinois, and claimed that such product had been utilized in classes lower than Class I, as Class I milk is described in the Order as originally issued and subsequently amended. The Market Administrator was denied access to the books and records of the Service Dairy Products,

Inc., and was unable to verify how the product thus reported as sold to the Service Dairy Products, Inc., by the defendant was used, and in accordance with Section 941.4(c) of Order No. 41, as amended, the Market Administrator reclassified the product in Class I and billed the defendant for the difference between the value of the utilization of the product, as claimed by the defendant, and the Class I value thereof.

16. The Board of Directors of the defendant corporation and the Board of Directors of the Service Dairy Products, Inc., consist, to a material extent, of the same persons.

17. The Market Administrator audited the books and records of the defendant for the delivery periods commencing August 1, 1940 and ending June 30, 1942, for verification of reports and payments made to the Market Administrator for the producer-settlement fund, and found errors in payments made by the defendant to the Market Administrator for the producer-settlement fund. The Market Administrator promptly following such audits billed the defendant for the amounts thus found so due. None of the amounts for which the defendant has been thus billed by the Market Administrator have been paid. The defendant has never, prior to the commencement of this action, protested or challenged the accuracy of these bills for adjustments, and the defendant has never petitioned the Secretary of Agriculture for a review of the actions of the Market Administrator in this regard. There is now due and owing from the defendant to the Market Administrator for the producer-settlement fund, by reason of such adjustments, the total sum of $93,615.29.

18. The Market Administrator, acting in accordance with the provisions of Order No. 41, as originally issued and subsequently amended, determined that each handler, including the defendant, should pay to the Market Administrator, as his pro rata share of the expense of the administration of Order No. 41, as originally issued and subsequently amended, two cents per hundredweight on all milk received from producers, or produced by such handlers during the period from September 1, 1939, to and including June 30, 1940, and two cents per hundredweight on all milk received from producers, or produced by such handlers during the period from September 1, 1939, to and including June 30, 1940, and two cents per hundredweight on all milk received from producers, from sources other than producers, or from other handlers, or produced by them, during the period from July 1, 1940, to and including December 31, 1941, and thereafter, down to the present date, such rate should be one and one-half cents per hundredweight on all such milk. The defendant for the period commencing April 1, 1940, and ending August 31, 1942, with the exception of the month of May, 1942, has failed and refused to pay to the Market Administrator its pro rata share of such expense. On the basis of its own reports of receipts of milk filed with the Market Administrator, the defendant, for the delivery periods ending August 31, 1942, owes the Market Administrator $9,230.49 as its pro rata share of the expense of the administration of Order No. 41, as originally issued and subsequently amended.

19. The court finds that with the exception of the month of May, 1942, for which month the plaintiff paid such deduction to the Market Administrator, the defendant owes to the Market Administrator, under the provisions of Section 941.-10 of Order No. 41, as originally issued and subsequently amended, for the period commencing April 1, 1940, to and including August 31, 1942, as market service charges deducted by the defendant from producers for payment to the Market Administrator, the total sum of $13,486.01.

20. The defendant has not paid producers for milk purchased or received by the defendant from producers during the delivery period August 1–31, 1942.

21. That heretofore, on October 21, 1942, Ed C. Quilling, Robert L. Pierce and Wm. F. Kraft, Receivers, were permitted to intervene in this action.

And as

## Conclusions of Law

The Court Finds:

1. Order No. 41, Order Regulating the Handling of Milk in the Chicago, Illinois, Marketing Area, issued August 28, 1939, effective September 1, 1939; said Order No. 41, as amended, issued June 21, 1940, effective July 1, 1940; said Order No. 41, as amended, issued June 27, 1941, effective July 1, 1941; and Amendment No. 1, to said Order No. 41, as amended, effective July 1, 1941, issued August 29, 1941, effective September 6, 1941, were severally issued by the Secretary of Agriculture of the United States, pursuant to and in full compliance with the provisions of the Act of May 12, 1933, 48 Stat. 31, as reenacted

and amended by the Agricultural Marketing Agreement Act of 1937, 50 Stat. 246, Title 7 U.S.C.A. § 601 et seq., and are valid.

■ 2. The defendant's business of handling milk in the Chicago, Illinois, Marketing Area constitutes the defendant a "handler" as defined in Section 8c(1) of the Agricultural Marketing Agreement Act of 1937, and as defined in Order No. 41, as originally issued and as subsequently amended, and is subject to the provisions of Order No. 41, as originally issued and subsequently amended.

■ 3. The provisions in the Order, as originally issued and subsequently amended, to the effect that all milk purchased or received by a handler from producers, associations of producers, and other handlers, including milk produced by him, if any, shall be classified by the Market Administrator in Class I when it is not accounted for in any other class, is authorized by the provisions of the Agricultural Marketing Agreement Act of 1937, and is in accordance with law.

■ 4. The provision in Order No. 41, as originally issued, (Section 941.4(c) ) that "milk disposed of by a handler to another handler, and milk disposed of by a handler to a person who is not a handler but who distributes milk or manufacturers milk products shall be classified as Class I milk, Provided, That if the selling handler on or before the 7th day after the end of the delivery period furnishes to the Market Administrator a statement which is signed by the buyer and the seller that such milk was disposed of as Class II milk or Class III milk, such milk shall be classified accordingly, subject to verification by the Market Administrator," is authorized by the provisions of the Agricultural Marketing Agreement Act of 1937, and is in accordance with law and places the burden on the handler who purchased the milk from producers of proving to the Market Administrator that such milk should not be classified as Class I milk.

■ 5. The provisions in Order No. 41, as amended (Section 941.4(c) ) providing that: "In establishing the classification of milk as required in paragraph (B) of this section, the responsibilities of handlers in establishing the classification of milk received by them shall be as follows: (1) In establishing the classification of any milk received by a handler from producers, the burden rests upon the handler who received the milk from producers to account for the milk and to prove to the Market Administrator that such milk should not be classified as Class I milk. (2) With respect to milk, or skimmed milk, disposed of to another handler, the burden rests upon the handler who purchased the milk from producers to account for the milk, or skimmed milk, and to prove to the Market Administrator that such milk, or skimmed milk, should not be classified as Class I milk * * *," are authorized by the provisions of the Agricultural Marketing Agreement Act of 1937, and are in accordance with law.

■ 6. The Secretary of Agriculture of the United States having found and proclaimed the period August, 1919–July, 1929, to be the base period to be used in determining the purchasing power of milk sold in the Chicago, Illinois, Marketing Area, the statute is satisfied. This is a matter solely within the discretion of the Secretary of Agriculture of the United States and is not a matter subject to review by the Court.

■ 7. The United States of America is a proper and necessary party plaintiff, and as such is authorized and entitled to institute and maintain this action.

■ 8. Where, as here, Congress has created a special administrative procedure providing for a review by the Secretary of Agriculture of the United States of actions and determinations of the Market Administrator, and which, as here, meet all requirements of due process, that remedy is exclusive, and this court has no jurisdiction to review the actions and determinations of the Market Administrator, except in proceedings under Section 8c(15) (B) of the Agricultural Marketing Agreement Act of 1937.

■ 9. The provision in Order No. 41, as originally issued, providing that each handler, as its pro rata share of the expense of the administration of the Order " * * * shall pay to the Market Administrator * * * a sum not exceeding two cents per hundredweight with respect to all milk purchased or received by him during such delivery period from producers, or produced by him * * *" and the provision in Order No. 41, as amended, providing that each handler, as its pro rata share of the expense of the administration of the

Order, as amended, " * * * shall pay to the Market Administrator * * * a sum not exceeding two cents per hundredweight with respect to all milk purchased or received by him during such delivery period from producers, from sources other than producers, or from other handlers, or produced by him * * *", are authorized by the provisions of the Agricultural Marketing Agreement Act of 1937, and are in accordance with law, and such charges are properly assessed on all milk received by handlers and are not dependent upon where such milk is sold.

10. The defendant has violated the provisions of Order No. 41, as originally issued and as subsequently amended, and has continued to violate the provisions of the Order, as amended, since the complaint herein was filed, and pursuant to the provisions of Title 7 U.S.C.A. § 608a(6), a final judgment specifically enforcing said Order No. 41, as originally issued and as subsequently amended, against the defendant should be entered requiring the defendant to comply fully with all of the provisions of said Order No. 41, as originally issued and as subsequently amended, from April 1, 1940, to the date of the entry of this judgment, and requiring it to comply fully in the future with all of the provisions of said Order No. 41, as amended.

11. That the defendant is indebted to the plaintiff in the sum of one hundred twenty-four thousand two hundred forty-five and 52/100 Dollars ($124,245.52), and that plaintiff is entitled to judgment against the defendant for said sum together with costs and disbursements.

Let judgment be entered accordingly.