### UNITED STATES v. WOOD et al.

#### No. 210.

District Court, D. Massachusetts.

June 1, 1945.

Edmund J. Brandon, U. S. Atty., and Joseph M. Hargedon, Asst. U. S. Atty., both of Boston, Mass., for plaintiff.

Martin Witte, of Boston, Mass., for defendant.

SWEENEY, District Judge.

This case involves two motions. The first has been filed by the defendant for leave to amend its answer; the second by the United States for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Findings of fact are based on the pleadings and supporting affidavits.

### Findings of Fact

This action was originally brought in March, 1939, to compel the defendant, Weiler-Sterling Farms Company (hereinafter referred to as the defendant), and others to comply with the terms of Order No. 4, a milk marketing order for the Greater Boston, Massachusetts, marketing area. Order No. 4 was promulgated under the authority of the Agricultural Marketing Agreement Act of 1937, 50 Stat. 246, 7 U. S.C.A. § 608c, hereinafter referred to as the Act. The complaint, among other things, requested an order directing full compliance with the reporting and other provisions of Order No. 4 and for the payment of all amounts due or to become due from the defendant to the Market Administrator.

A preliminary injunction was issued herein which directed this defendant and other defendants to file reports and make all payments then due or to become due under Order No. 4. Thereafter the reports were filed and the amounts due through December 26, 1939, were paid.

On or about January 2, 1940, the defendant filed a petition with the Secretary of Agriculture under section 8c (15) (A) of the Act in which it requested a review and determination of its status under Order No. 4. On or about April 1, 1940, this petition was dismissed without prejudice on motion of the defendant.

In October, 1940, an action was brought in the District of Maine for the purpose of enforcing the provisions of Order No. 4 against Norway Dairy, Inc., a Maine corporation, which was engaged in the busi-

ness of handling milk in that state from January 16, 1938, to August 31, 1939. In this action the defendant, Norway Dairy, Inc., appeared and answered and admitted that it was a handler as alleged, and further admitted its obligation to the Market Administrator to make payment of all amounts due under the order. On November 19, 1940, a stipulation was entered between the United States and Norway Dairy, Inc., which secured the compliance by the latter of all the terms and conditions of the order. Thereafter reports were filed by Norway as to milk handled by it during the above period. Still later the Market Administrator issued bills to Norway Dairy, Inc., with respect to milk that was set forth in their reports. These bills included charges allocated to producer settlement funds, administration expenses, and marketing services, aggregating $29,979.90.

On October 5, 1942, the Market Administrator notified the defendant that it appeared that during 1938 and 1939 the defendant had actually handled the milk reported by Norway Dairy, Inc., and that the defendant was liable for such handling. Relevant portions of this notification were as follows:

"On the basis of information received I have made a determination that Weiler-Sterling Farms Co. was actually the handler of all milk reported in the name of Norway Dairy, Inc. At the present time my auditors are engaged in making the necessary adjustments to bring these additional quantities of milk into your account with my office.

"For the period August 1–31, 1942, Weiler-Sterling Farms Co.'s operations resulted in a credit of $69.14 to its producer settlement account. This credit is being applied to the indebtedness which originally stood in the name of Norway Dairy, Inc. Future credits will be applied in this way until the account has been settled. * * *."

On October 21, 1942, a petition under section 8c (15), (A) of the Act, requesting a review of such action of the Market Administrator, was filed with the Secretary of Agriculture.

On November 14, 1942, the Market Administrator, having completed the computation referred to in his notice of October 5, notified the defendant that he had transferred the debit accounts of Norway Dairy, Inc., to the debit account of Weiler-Sterling, and that he had applied toward that account all credits then due Weiler-Sterling and would, likewise, apply all credits which might thereafter become due to it. The debit accounts thus transferred totaled $29,979.90.

After crediting the amount deducted on October 5, 1942, the unpaid balance was $29,896.58. Weiler-Sterling avers that the aggregate of the credits which the Market Administrator applied as of November 14, 1942, and thereafter to December 4, 1944, was $932.36.

As a result of a pre-trial conference held before Judge Wyzanski, a memorandum [1] was prepared by him, dated December 22, 1942, which reads in part as follows: "In the proceedings involving Weiler-Sterling Farms Company, the situation is in some respects expected to be like the Henshaw case. Application has been filed by the Company with the Secretary of Agriculture. It is expected that the application will be amended. The secretary has not yet in any way passed upon the application. After the Secretary has passed upon the application and a review by the courts, if any, has been completed, the disposition in this case of the Weiler-Sterling Farms Company matter shall conform to the disposition finally achieved in the matter where the Weiler-Sterling Farms Company has already applied to the Secretary of Agriculture for review. In the event that the Company does not seek judicial review of the Secretary of Agriculture's rulings, the rulings of the Secretary of Agriculture shall be regarded as the guide for the judgment to be entered in this procedure."

In January, 1943, the defendant moved to amend the petition before the Secretary in order to include the controverted November 14, 1942, billing. The motion to amend the petition was granted by the Secretary.

On October 2, 1943, Norway Dairy, Inc., forwarded its check for $5,000 payable to the Market Administrator on account of the obligations imposed by him upon said Norway Dairy, Inc. This check was accepted and in due course it was paid.

In October 1943 a formal hearing on the defendant's petition before the Secretary was held at Boston, Massachusetts.[2] The

---

[1] No opinion for publication.

[2] The War Food Administrator succeeded to and assumed such functions and powers of the Secretary of Agri-

record of the hearing consists of some 365 pages of testimony and 28 exhibits. The defendant thereafter filed briefs, and oral argument was held before the presiding officer on November 2, 1943, at Washington, D. C. The record of the oral argument occupies 38 additional pages of transcript. On May 8, 1944, an order was made in the proceeding before the Secretary upholding the contested billing by the Market Administrator. In effect the Secretary decided that the Weiler-Sterling-Norway Dairy, Inc., arrangement was substantially similar to that between the Stuart Milk Company and the Green Valley Creamery, Inc. In the latter situation the corporate facade was ignored in fixing the obligation of the handler. Green Valley Creamery, Inc. v. United States, 1 Cir., 108 F.2d 342; Parker v. United States, 1 Cir., 126 F.2d 370, 1 Cir., 129 F.2d 374, 1 Cir., 135 F.2d 54.

On June 22, 1944, formal demand was made upon the defendant for the amounts due under the decision of the Secretary. On July 6, 1944, the defendant made a payment of $12,500 on account thereof, and indicated that it expected the preparation of a motion for judgment. The United States accordingly filed a motion for summary judgment. On January 23, 1945, the defendant moved for leave to amend its answer so as to include defenses unsuccessfully litigated before the Secretary. It also seeks to assert on the same basis a counterclaim for the return of the $12,500 payment on account which it made on July 6, 1944, as well as the $932.36 in accumulated credits which had been applied against this account.

The net amounts due from the defendant after crediting all payments and credits are set forth in the motion for summary judgment as follows:

"(a) The sum of $13,960.58 for producer-settlement.

"(b) The sum of $91.30 for expenses of administration.

"(c) The sum of $85.31 for marketing services.

"(d) The sum of $208.68 representing unpaid payments to producers from January 16, 1938 to January 15, 1939; the said amounts representing the net balance due the plaintiff as of December 2, 1944, all

making a total of $14,345.87 to be paid by said defendant."

The defendant contends that the amount of $14,345.87 is some $3,000 in excess of its obligations even after deducting therefrom the $5,000 paid by Norway Dairy, Inc., and the $12,500 paid by Weiler-Sterling. The discrepancy is caused by the questioned applicability of Section 904.-10 of Order No. 4 to the amounts here involved.

In essence the defendant's position is that the Market Administrator was not vested with the jurisdiction or authority to adjudge the defendant to be the handler of the milk in question; that he had no jurisdiction or authority to bill the defendant for such milk or to determine the amount of such bill; and that, in consequence, the Market Administrator's action is a mere nullity which can be attacked in a District Court of the United States without reference to any statutory period of limitation for the institution of such proceedings. The defendant further maintains that the Market Administrator did not afford him an opportunity to be heard prior to such billing in violation of the due process clause of the Fifth Amendment of the Constitution of the United States.

Section 8c (15) of the Agricultural Marketing Agreement Act of 1937 provides in part as follows:

Petition by Handler and Review. "(15) (A) Any handler subject to an order may file a written petition with the Secretary of Agriculture, stating that any such order or any provision of any such order or any obligation imposed in connection therewith is not in accordance with law and praying for a modification thereof or to be exempted therefrom. He shall thereupon be given an opportunity for a hearing upon such petition, in accordance with regulations made by the Secretary of Agriculture, with the approval of the President. After such hearing, the Secretary shall make a ruling upon the prayer of such petition which shall be final, if in accordance with law.

"(B) The District Courts of the United States (including the district court of the United States for the District of Columbia) in any district in which such handler is an inhabitant, or has his principal place

culture as of April 19, 1943, under E. O. 9334 of the President, 50 U.S.C.A. Appendix, § 601 note, 8 F.R. 5423. Therefore all references to the "Secretary" relating to dates after April 19, 1943, refer to the War Food Administrator acting pursuant to such authority.

of business, are hereby vested with jurisdiction in equity to review such ruling, provided a bill in equity for that purpose is filed within twenty days from the date of the entry of such ruling. * * * If the court determines that such ruling is not in accordance with law, it shall remand such proceedings to the Secretary with directions either (1) to make such ruling as the court shall determine to be in accordance with law, or (2) to take such further proceedings as, in its opinion, the law requires. * * *"

It is a well settled principle that where a statute provides for a remedy within the administrative framework this remedy must be exhausted before access may be had to a court of equity. Anniston Manufacturing Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143; Sunshine Anthracite Coal Co. v. Adkins, 301 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263. Equally well established is the doctrine that where a right of review is conferred by statute the aggrieved party is bound to pursue that method of appeal in the orderly processes of the administration of the law. White v. Johnson, 282 U.S. 367, 51 S.Ct. 115, 75 L.Ed. 388; American Bond & Mortgage Co. v. United States, 282 U.S. 374, 51 S.Ct. 118, 75 L.Ed. 395.

Section 8c (15) (A) of the Act provides a method of review whereby any handler subject to an order may file a petition with the Secretary of Agriculture stating that any obligation imposed in connection with an order is not in accordance with law. This section of the Act prescribes an exclusive procedure for the determination of such issues. La Verne Co-op. Citrus Ass'n v. United States, 9 Cir., 143 F.2d 415; United States v. Hogansburg Milk Co., Inc., D.C., 57 F.Supp. 297. Paragraph (B) of section 8c (15) specifically limits the jurisdiction of the District Courts to review the Secretary's action to cases where "a bill in equity * * * is filed within twenty days after the entry of such ruling." This provision establishes an exclusive method for judicial review, and and a District Court has no jurisdiction to entertain an appeal concerning the actions of the Market Administrator except in pursuance thereof. United States v. Ridgeland Creamery Co., D.C., 47 F.Supp. 145.

In the instant case judicial review was not requested by the defendant within the prescribed time limit. Not having filed an appeal within the statutory period the defendant is precluded from challenging the action of the Market Administrator in the present enforcement proceeding.

I cannot agree with the defendant's position that, since the Market Administrator exceeded his authority under Order No. 4, his action in determining that Weiler-Sterling was the handler and in billing it for the milk in question was a mere nullity and reviewable in this proceeding. If the Market Administrator overreached his authority then it was "an obligation imposed not in accordance with law" within the terms of the statute, and the defendant is put to his statutory remedies.

The reliance of the defendant on the dictum in La Verne Co-op. Citrus Ass'n v. United States, supra, is misplaced. That dictum concerned an invalidity, apparent on its face, of a general order analogous to Order No. 4, and not an unauthorized action by the Market Administrator purporting to act under the authority of a valid general order. In the latter instance the statutory remedy is exclusive.

The defendant contends that the failure of the Market Administrator to give him an opportunity to be heard before the transfer of the Norway obligation to his account constitutes a denial of due process of law. It is clear that, when administrative action is taken in an adversary proceeding without affording adequate notice and opportunity to defend to interested parties, basic constitutional rights are invaded. Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 999, 82 L.Ed. 1129; Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093. This does not mean that the hearing must invariably precede the administrative action. Where considerations of administrative expediency weigh heavily, and where opportunity for a full and adequate hearing is available within the administrative process, no fundamental rights are transgressed when the hearing follows, rather than precedes, the action of the administrative agency. Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289; Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892. I believe that the instant case falls within the authority of these decisions. The defendant has had a full and fair hearing before the Secretary and should not now be heard to com-

plain that he has had no opportunity to defend himself in the administrative proceedings.

■ The defendant's contention that the relief sought in the motion for summary judgment is not within the scope of the pleadings in this action is unsupportable. It is true that the administrative determination of the amounts actually due from the defendant as a handler did not occur until after the institution of this action. However, it should be pointed out that this complaint was filed against some 68 defendants, including Weiler-Sterling, for violations and threatened violations of Order No. 4. When this action was instituted in 1939 it was impossible to determine with any degree of accuracy what amounts were due from each defendant. In its prayer for relief the Government asked for an injunction ordering the several defendants "to file all reports and to pay all amounts now due and owing under the provisions of said order". The preliminary injunction which subsequently was issued recognized that the defendant's obligation was not irrevocably fixed at the date of the complaint by requiring the payment of all amounts due "or that hereafter become due". This indicated the court's expectation that the limits of the defendant's obligation would be defined with greater exactitude at some future time.

■ When the pre-trial conference was held before Judge Wyzanski the parties were clearly apprised of the fact that the charges here in dispute were considered within the scope of this action. The context of Judge Wyzanski's memorandum supports this conclusion. The pre-trial proceeding is the latest summary of the state of the case before trial, and is controlling on the issue now sought to be raised by this defendant concerning the scope of the pleadings. See Rule 16, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. There is no element of surprise in compelling the defendant to proceed on the present state of the

record, and his rights are not prejudiced thereby. Furthermore, the letter written by defendant's counsel which accompanied the payment of $12,500 on July 6, 1944, indicates that the amounts in controversy are within the scope of this action.

There remains for consideration the question whether the $14,345.47 demanded in the motion for summary judgment is excessive by almost $3,000, as the defendant maintains. The answer turns on the applicability of section 904.10(i) of Order No. 4 to the charges involved in this motion. This section reads as follows: "Any balance due pursuant to this section to or from the market administrator on the 10th day of any month, for which remittance has not been received in, or paid from, his office by the close of business on that day, shall be increased one half of 1 percent, effective the 11th day of such month."

■ It may be conceded that the amounts due from this defendant are technically balances due from a handler. This section was intended as a means of securing the prompt payment of amounts due under the provisions of Order No. 4. However, I believe that its application was intended to be limited to those cases arising in the normal functioning of the administration of the order. I do not believe that it was intended to apply to an unusual transaction of the type under consideration in the instant case, where an obligation is transferred in bulk from the purported handler to the real handler. The amounts levied under the terms of this section are not properly assessed against this defendant. His obligation is fixed by the final decision of the Secretary on May 8, 1944, with interest on unpaid balances from that date.

Conclusions of Law

In the light of the foregoing, the motion for summary judgment is granted with the adjustment as to interest indicated above. The motion to amend the defendant's answer is denied.