## UNITED STATES v. KELLY.
### No. 293.

District Court, N. D. Iowa, E. D.
Dec. 20, 1946.

Franklin E. Gill and William B. Danforth, Asst. U. S. Dist. Attys., both of Sioux City, Iowa, for plaintiff.

McCoy and Beecher, of Waterloo, Iowa, for defendant.

GRAVEN, District Judge.

Case involving right to maintain action against the United States for payments under the Soil Conservation and Domestic Allotment Act, 16 U.S.C.A. §§ 590a to 590q. On October 10, 1940, the Commodity Credit Corporation, a corporate agency of the United States, made three so-called corn loans to the defendant. The notes evidencing the loans were secured by chattel mortgages upon specified sealed cribs of corn. Under the terms of the loans, the defendant, at their maturity, had the option to either pay them in money, or to deliver to the Commodity Credit Corporation in satisfaction of them, the number of bushels of corn stated in the mortgages securing the notes, grading No. 3 or better. Two of the corn loan notes were due on or before August 1, 1941, and one corn loan note was due on or before August 1, 1942. It is the claim of the plaintiff that the defendant attempted to satisfy the loans by the delivery of corn but that the defendant did not deliver the amount of the corn specified nor the grade of corn specified, and that the defendant is indebted to it for the shortage for which shortage recovery is asked in this action.

The defendant, in addition to denying the claim of the plaintiff sets up a counterclaim, filed April 6th, 1946, in which he asks recovery for Soil Conservation, Production Adjustment, and Parity Payments, for the years 1942 and 1943 under the Soil Conservation and Domestic Allotment Act, in the approximate sum of $1,200.00. The amount claimed by the plaintiff is in excess of the amount claimed by the defendant. The plaintiff asserts that the defendant cannot maintain an action against the United States on his claim. A hearing was had upon the issue of whether the defendant could maintain an action against the United States on his claim. At the hearing the parties introduced their evidence bearing upon that issue. That issue is now to be determined.

The defendant for a long period of time has been a farmer engaged in operating a farm owned by him in Black Hawk County, Iowa. He has operated that farm since 1934 at least. Under the provisions of the Soil Conservation and Domestic Allotment Act 16 U.S.C.A. §§ 590a to 590q the Secretary of Agriculture provided for payments to farmers who participated in the farm programs of the Department during the years 1940, 1941, 1942, and 1943. The parties refer to the program as the Triple A program and to the payments as Triple A payments. The corn loans of the type secured by the defendant were an integral part of the Triple A program for the years 1940, 1941, 1942 and 1943, and only those who participated in the Triple A program were eligible to secure loans such as the defendant secured. Under the Triple A program the farmers who intended to participate in the Triple A program for those years filed notices of their intention to so participate. Such notices of intention to

participate had to be filed early in the crop year.

Congress, by 16 U.S.C.A. § 590h (b) provided for committees to assist in the administration of the programs under the Act. Under that section, the farmers participating in the program in a local area elected a local area committee of three members. The same farmers elected delegates to a county convention. The county convention elected a county committee of three members. The same section provided that there should be a State Committee of three to five members appointed by the Secretary of Agriculture. The Secretary of Agriculture divided the country into five regional areas for the purposes of administration, and appointed a regional administrator for each area. In Black Hawk County, Iowa, during the period of time in question, the local area committee was known as the local Township Committee. The defendant was a member of the local Township Committee from 1934 up to and including the year 1944. He was chairman of the local Township Committee in 1941, 1943, and 1944.

During the years of 1942 and 1943 payments were made to those participating in the program for soil building or soil conservation practices, for production practices and by way of parity. Farmers participating in the program, in order to secure those payments, had to do two things: (1) they had to present to the county committee a performance report showing what soil building or soil conservation and practices they had carried out and also show the allotted acreages for the various crops and the yield; (2) they had to file an application for payment with the county committee for payments claimed to be due them under the program. It was the custom and practice of the county committee to fill out the forms of application for Triple A payments. The county committee had the application forms for making application for Triple A payments. There was nothing to prevent farmers participating in the program from securing the forms for making applications for Triple A payments from the county committee and filling out the forms themselves if they wished. After approval by the county committee, the applications were sent to the State Committee and by it to the Regional Director for review and payment. In 1942 the program provided payments for what were termed Agricultural Conservation and Parity Payments. In 1943 the program provided for Production Parity Payments and for Production Adjustment Payments. The defendant participated in the 1940, 1941, 1942 and 1943 programs.

Prior to October, 1942, the defendant had attempted to satisfy the corn loan notes by delivery of corn in payment of the notes. These having to do with those loans reported to the County Committee for Black Hawk County that the defendant had not delivered corn of the quantity and grade to satisfy the loans and that there was still a balance owing by the defendant. The defendant, in October 1942, presented to the county committee for Black Hawk County, Iowa, a performance report for the year 1942. The county committee for Black Hawk County filled out an application for the defendant to sign making application for the payment of his 1942 Triple A payments. In the application as filled out by the county committee there was set forth as a deduction from the Triple A payments the shortage on the defendant's corn loans. The defendant refused to sign the application. The defendant did not request an application for the purpose of making out the application in the form that he deemed correct. The defendant did nothing further towards making application for his 1942 Triple A payments.

On or about August 30, 1943, the defendant presented to the Black Hawk County committee a performance report for the year 1943. The county committee then prepared the application for the defendant to sign for his 1943 Triple A payments. The county committee again included in the application a deduction from the Triple A payments of the shortage on the corn loans. The defendant refused to sign the application. The defendant did not request an application form for making out the application in the form that he deemed correct. The defendant did nothing further towards making application for his 1943 Triple A payments.

31 U.S.C.A. § 71 provides "All claims and demands whatever by the Government of the United States or against it, and all accounts whatever in which the Government of the United States is concerned, either as debtor or creditor, shall be settled and adjusted in the General Accounting Office." 28 U.S.C.A. § 774 provides: "In suits brought by the United States against individuals, no claim for a credit shall be admitted, upon trial, except such as appear to have been presented to the accounting offices of the Treasury for their examination, and to have been by them disallowed, in whole or in part, unless it is proved to the satisfaction of the court that the defendant is, at the time of the trial, in possession of vouchers not before in his power to procure, and that he was prevented from exhibiting a claim for such credit at the Treasury by absence from the United States or by some unavoidable accident."

At the hearing in the present case the defendant testified that his claim for Triple A payments had never been presented to the accounting offices of the Treasury.

■ Therefore, the defendant cannot maintain his action as a counter-claim under 28 U.S.C.A. § 774. See also United States v. Hogansbury Milk Co., D.C.N.Y., 1944, 57 F.Supp. 297, 299. The question then presents itself as to whether the defendant may maintain an action on his claim as an original action.

The defendant claims the right to maintain his action against the United States for his Triple A payments under the provisions of the Tucker Act. 28 U.S.C.A. § 41 (20). The pertinent portion of that Act provides in respect to the jurisdiction of the United States District Courts as follows: "Concurrent with the Court of Claims, of all claims not exceeding $10,000 founded * * * upon any contract, express or implied, with the Government of the United States, * * * in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable, * * *."

The parties are in disagreement as to the legal character of Triple A payments. The plaintiff claims that such payments are gratuities for which no action may be maintained against the United States. The defendant asserts that his claim for them is one upon contract and can be maintained under the provisions of the Tucker Act.

The matter of the legal character of Triple A payments has and is a matter of some doubt and uncertainty. The background of this doubt and uncertainty is the case of United States v. Butler, 1936, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, where the United States Supreme Court held unconstitutional the provision of the Agriculture Adjustment Act, 7 U.S.C.A. § 601 et seq., under which the Secretary of Agriculture had been entering into contracts with farmers for the reduction of acreage and the control of production. On pages 72 and 73 of 297 U.S., page 322 of 56 S.Ct., the Court stated: "It is said that Congress has the undoubted right to appropriate money to executive officers for expenditure under contracts between the government and individuals; that much of the total expenditures is so made. But appropriations and expenditures under contracts for proper governmental purposes cannot justify contracts which are not within federal power. And contracts for the reduction of acreage and the control of production are outside the range of that power." On page 73 of 297 U.S., page 322 of 56 S. Ct., the Court continues: "We are not here concerned with a conditional appropriation of money, nor with a provision that if certain conditions are not complied with the appropriation should no longer be available. * * *. There is an obvious difference between a statute stating the conditions upon which money shall be expended and one effective only upon assumption of a contractual obligation to submit to a regulation which otherwise could not be enforced."

Following this decision, the Secretary of Agriculture handled farm programs under the provisions of the Soil Conservation and Domestic Allotment Act, 16 U.S.C.A. §§ 590a to 590q, under which Congress provided for "Payments and grants of aid". See § 590h. The programs for 1942 and 1943 were handled under the provisions of that Act. Under the programs for these years,

the Secretary of Agriculture did not enter into written contracts with the farmers, but provided for payments under conditions to those who participated in the program.

Under the decision in the case of United States v. Butler supra, if the Triple A payments were to be regarded as being due under contracts between the United States acting by Secretary of Agriculture and a farmer, they would, if that case continued as authority, fall under the constitutional ban. The question then presented itself, whether payments provided for under the Soil Conservation and Domestic Allotment Act were gifts or not. In the case of Baboquivari Cattle Co. v. Commissioner of Internal Revenue, 9 Cir., 1943, 135 F.2d 114, a farmer operator who had received such payments contended that such payments were gifts or gratuities and that it should not pay income tax on them because they were exempt as gifts. The Ninth Circuit Court of Appeals rejected that contention, stating on page 115: (Italics supplied) "It is plain that the moneys received were not exempt as gifts under § 22(b) (3) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev. Acts, page 826; *they were earned payments made upon a consideration.*"

The defendant claims that when the Secretary of Agriculture specifies the payments that are to be made to those farmers who conform to specified practices under the Triple A program, and a farmer in reliance thereon does so conform, that in legal effect the transaction constitutes an acceptance of an offer by an act and results in a contract obligation. The defendant further claims that it would be unconscionable for the United States to hold out inducements of payments to a farmer for conformity to specified practices under the Triple A program and then after a farmer had conformed in reliance upon such inducements to refuse to make the payments.

However, even if it be assumed, as the defendant claims, that the United States did incur contractual liability to the defendant because of his conformance to the Triple A program, the defendant is met with other obstacles. In the case of United States v. Babcock, 1918, 250 U.S. 328, 331, 39 S.Ct. 464, 465, 69 L.Ed. 1011, the Court states: "These general rules are well set-

tled: (1) That the United States, when it creates rights in individuals against itself, is under no obligation to provide a remedy through the courts. * * *. That where a statute creates a right and provides a special remedy, that remedy is exclusive."

In the recent case of United States v. Joseph A. Holpuch Co., 328 U.S. 234, 66 S. Ct. 1000, 1001, the United States entered into contracts with a contractor for the construction of buildings at an army camp. The contracts provided that "All other disputes concerning questions arising under this contract shall be decided by the contracting officer or his duly authorized representative, subject to written appeal by the contractor, within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto as to such questions." A dispute arose between the contracting quartermaster and the contractor, as to whether certain work on footings and certain wages claimed by bricklayers were the obligation of the contractor or the United States. The contractor, without resorting to the appeal provision, went ahead and made the additional expenditures. The contractor then sued the United States in the Court of Claims for such additional expenditures. The Court of Claims held in favor of the contractor. 104 Ct.Cl. 254. The United States Supreme Court granted certiorari, 327 U.S. 772, 66 S.Ct. 701, and then reversed the Court of Claims, holding that where the United States has entered into a contract with a party and the contract contains provision for administrative review of disputes under it, and such party does not make use of such provision, that he is barred from bringing suit against the United States for the disputed amount claimed to be due.

In the case of United States v. Hogansbury Milk Co., D.C.N.Y., 1943, 57 F.Supp. 297, a milk producer sought to assert a claim against the United States for milk subsidies alleged to have been wrongfully withheld. The regulations relating to the milk program provided for administrative review of the withholding of milk subsidies.

The claimant did not avail himself of that remedy. It was held that the claimant

not having exhausted his administrative remedies could not maintain the action. See also United States v. Wood, D.C. Mass., 1945, 61 F.Supp. 175, 179. On the necessity of a producer making use of administrative remedies under the Agricultural Marketing Act, 7 U.S.C.A. § 601 et seq., see United States v. Ruzicka, 67 S.Ct. 207.

■ In the present case, the defendant claims under the Soil Conservation and Domestic Allotment Act, 16 U.S.C.A. §§ 590a to 590q. It is obvious that with several million farmers participating in the farm programs under that Act that disputes could and do arise between different county committees and farmers as to their payments. Such disputes could arise as to acreage, yield, soil conservation practices or deductions. It would hardly seem that Congress intended that federal district courts should be charged with settling and determining all such disputes, in the first instance at least. It would seem that Congress intended that questions in regard to such payments should be subject to administrative supervision and review. In 16 U.S.C.A. § 590n relating to Triple A payments for the years 1936 to 1939, it is provided: "The facts constituting the bases for any payment or grant or the amount thereof authorized to be made under section 590g or 590h of this title, when officially determined in conformity with rules or regulations prescribed by the Secretary of Agriculture, shall be reviewable only by the Secretary of Agriculture."

In 7 U.S.C.A. § 1385 relating to Triple A payments for 1940 and subsequent years it is provided in part as follows: "The facts constituting the basis for any payment under sections 590a–590q of Title 16, parity payment, or loan, or the amount thereof, when officially determined in conformity with the applicable regulations prescribed by the Secretary [of Agriculture] or by the Commodity Credit Corporation, shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government." Under 16 U.S.C.A. § 590h (b) the Secretary of Agriculture was given authority to make the necessary regulations to carry out the administration of programs under the Soil Conservation and Domestic Allotment Act.

The Secretary of Agriculture provided by regulation that applications for payments for Triple A payments should be filed with the county committee. The Secretary of Agriculture first provided that applications for such payments for the year of 1942 should be filed with the county office not later than March 31, 1943. Later the Secretary of Agriculture provided that such applications should be filed in the county office not later than June 30, 1944. The Secretary provided that applications for such payments for the year 1943 should be made not later than June 30, 1945.

The Secretary of Agriculture by regulation provided for administrative review of the actions of county committees. 1941 Supplement to 7 Code of Federal Regulations pages 716 and 717; 1943 Cumulative Supplement to Code of Federal Regulations page 2121. Under those regulations an applicant deeming himself aggrieved by the action of a county committee could upon written request secure a reconsideration of the matter by that committee. Within 15 days after such written request the county committee had to notify the applicant of its decision. If the applicant was dissatisfied with such decision an appeal could be taken to the State Committee. If the applicant was dissatisfied with the decision of the State Committee he could have the decision reviewed by the Regional Director.

■ In the present case the defendant has never filed an application for the claimed Triple A payments for 1942 and 1943 with the county committee. The refusal of the defendant to sign applications cannot be considered as a filing of them. The defendant made no use of the administrative remedies provided for in cases of disputes with county committees under which he could have had the action of the Black Hawk County Committee in attempting to deduct the claimed shortages on his corn loans reviewed by the State Committee and the Regional Director.

The defendant cites the case of Herren v. Farm Security Administration, 8 Cir., 1946, 153 F.2d 76. In that case the Farm Security Administration had entered into

a farm lease. The lessor brought an action against it to recover damages for the breach of a covenant against waste contained in the lease. The Eighth Circuit Court of Appeals held that the lease was in fact and in law a contractual obligation of the United States and that the United States could be sued for the breach of the lease under the Tucker Act. The situation in that case differs from that in the instant case, in that in the Herren case there was not involved the question of administrative appeal provisions and there was not involved the question of having filed claim within a specified period of time. As to certain phases of Triple A payments see Regional Agricultural Credit Corporation v. Anderson, 8 Cir., 1943, 132 F.2d 873. In the case of Moore v. United States, D.C.S.D. Iowa, 1942, 45 F.Supp. 656, it was held that an action could not be maintained against the United States for payments under the Soil Conservation and Domestic Allotment Act.

■ It is the holding of the Court that the defendant having failed to comply with the administrative provisions in regard to the filing of his claim and having failed to exhaust the administrative appeal provisions provided for the review of actions of county committees is barred from maintaining this action against the United States.