**WALLACE, Secretary of Agriculture, v. GANLEY et al.**

**WALLACE, Secretary of Agriculture, et al. v. LEIGH.**

**Nos. 6929, 6930.**

United States Court of Appeals for the District of Columbia.

Decided Feb. 7, 1938.

John S. L. Yost, Sp. Asst. to Atty. Gen., and Leslie C. Garnett, U. S. Atty., of Washington, D. C., for appellants.

Sefton Darr and James O'D. Moran, both of Washington, D. C., for appellees Ganley and others.

Frederick Stohlman and George A. Cassidy, Jr., both of Washington, D. C., for appellee Leigh.

Before ROBB, GRONER, and MILLER, Associate Justices, and WHEAT, Chief Justice, District Court.

MILLER, Associate Justice.

The appellees in these cases are dairy farmers, residing in Maryland and Virginia. Each of them is licensed by the District of Columbia to sell milk in the District and each is a party to a written contract for the sale of milk to a distributor therein.

On September 17, 1936, the Secretary of Agriculture promulgated a Milk Marketing Order effective September 21, 1936, for the District of Columbia, pursuant to the provisions of the Agricultural Adjustment Act, as amended by the Act of August 24, 1935,[1] which fixed minimum prices to be paid to producers by the handlers or distributors to whom the producers sell their milk. Thereafter, on September 30, 1936, the appellees filed their bills challenging the constitutionality of the act and the validity of the order issued thereunder, and seeking to enjoin and restrain, pendente lite as well as permanently, the enforcement of the Milk Marketing Order.

The two causes were consolidated, by consent, in the court below, and were heard on the bills and exhibits thereto, the rules to show cause, the returns to the rules, and affidavits and exhibits filed by all the parties. The lower court entered orders enjoining and restraining appellants pendente lite from enforcing the order in so far as it affected the appellees. We allowed special appeals and these, too, were consolidated and heard together in this court.

[1] Act of May 12, 1933, c. 25, Title I, 48 Stat. 31, as amended by the Act of August 24, 1935, c. 641, 49 Stat. 750, 70 U. S.C.A. § 601 et seq. and notes.

366

The return to the rule to show cause is substantially the same in each case. The appellants insisted that injunctions should not be issued: First, because the appellees have no standing to maintain the suits; second, because insufficient facts are alleged to show that the appellees are suffering or will suffer irreparable injury by reason of the order; third, that the appellees have a complete and adequate remedy at law.

As to appellant's first contention, that appellees have no standing to maintain the suits, it is settled law that the courts have no power to consider in isolation and annul an act of Congress on the ground that it is unconstitutional; but may consider that question only when the justification for some direct injury *suffered* or *threatened,* presenting a justiciable issue, is made to rest upon such an act. The term "direct injury" is used in its legal sense, as meaning a *wrong* which directly results in the violation of a legal right. If the act complained of does not violate any of a person's legal rights, he has no cause to complain. Alabama Power Company v. Ickes, 58 S.Ct. 300, 82 L.Ed. ——, decided January 3, 1938; Massachusetts v. Mellon, 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078.

We are barred, then, from any consideration of the constitutionality of the act in question unless it affirmatively appears that a wrong has been suffered or threatened, which has directly resulted or which will directly result in the violation of a legal right of appellees.

The only legal rights of the appellees which appear in these cases arise under their contracts with the handlers or distributors of milk (namely, Highland Farms Dairy in No. 6929, and Model Farms Dairy in No. 6930). The only violation of rights which could be suffered or threatened would be by breach of contract. But in neither case do the appellees allege that a breach of contract has taken place; nor that the Dairies, who are—with them—parties to their several contracts, have threatened a breach of contract; nor that the threatened enforcement of the act and order by the Secretary will cause the Dairies to break their contracts; nor that the Dairies have notified them that as a result of the act and order the Dairies will pay them less than is provided by their contracts; nor even that the Dairies have notified them that they intend to comply with the order, much less that as a result they will not carry out the terms of their contracts.

To the contrary, appellant's return to the rule in No. 6929 states that "As a matter of fact, Highland Farms has announced publicly and to the Market Administrator appointed by the Secretary of Agriculture to administer the said order that it will not comply with the order and that it will continue to abide by its contracts with the plaintiffs [appellees]." Furthermore, the Market Administrator in his affidavit in support of the return stated that the President of the Highland Farms Dairy, on October 5th, five days after the present bill was filed, notified him "that the Highland Farms Dairy did not intend to comply with any of the terms of said Order, and would not furnish the requested reports," which were due on that day. In other words, for aught that appears in this record, the Dairies will continue to perform their contracts with appellees.

It is a well-recognized principle of the law of pleading that every bill must contain in itself sufficient matters of fact, per se, to maintain the pleader's case (Garrett v. Louisville & Nashville R. R., 235 U.S. 308, 313, 35 S.Ct. 32, 59 L.Ed. 242; Harrison v. Nixon, 34 U.S. 315, 329–330, 9 Pet. 483, 503, 9 L.Ed. 201); and this is a vital necessity, where, as here, it is sought to challenge the constitutionality of an act of Congress. But the appellees insist, and the lower court held, that it was unnecessary for them to allege that the Dairies have threatened to break their contracts—the ground urged being that the act and the order themselves produced that result by imposing upon the Dairies penalties for the violation of the order, thus "abrogating" the contracts. Appellees rely on Pennsylvania v. West Virginia, 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117, 32 A.L.R. 300, and Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468. An examination of those cases, however, reveals that in each of them there appears an allegation of fact showing injury already suffered, or immediately threatened—no counterpart of which allegations appears in the present bills.

In Pennsylvania v. West Virginia, supra, the Supreme Court referred at length to the allegations in the pleadings and then said (262 U.S. 553, at page 591, 43 S.Ct. 658, 663, 67 L.Ed. 1117, 32 A.L.R. 300):

"What is sought is not an abstract ruling on that question [interference with interstate commerce], but an injunction against such a withdrawal *presently threatened* and likely to be productive of great injury. The

purpose to withdraw is shown in the enactment of the defendant state before set forth and is about to be carried into effect by her officers acting in her name and at her command. The state is the principal, and the action of her officers rightly may be imputed to her, even though a suit for an injunction might lie against them.

"The attitude of the complainant states is not that of mere volunteers attempting to vindicate the freedom of interstate commerce or to redress purely private grievances. Each sues to protect a twofold interest—one as the proprietor of various *public institutions and schools whose supply of gas will be largely curtailed or cut off* by the threatened interference with the interstate current, and the other as the representative of the consuming public whose supply will be similarly affected. Both interests are substantial and both are threatened with serious injury." (Italics supplied)

Moreover, that case is properly distinguishable from the present suits on another ground; namely, that a state sues in its capacity as parens patriæ and to protect against an invasion of its quasi sovereign power. This distinction is clearly made by the court in Georgia v. Tennessee Copper Co., 206 U.S. 230, 237, 27 S.Ct. 618, 619, 51 L.Ed. 1038, 11 Ann.Cas. 488. That opinion states:

"The case has been argued largely as if it were one between two private parties; but it is not. The very elements that would be relied upon in a suit between fellow-citizens as a ground for equitable relief are wanting here. The state owns very little of the territory alleged to be affected, and the damage to it capable of estimate in money, possibly, at least, is small. This is a suit by a state for an injury to it in its capacity of quasi sovereign. In that capacity the state has an interest independent of and behind the titles of its citizens, in all the earth and air within its domain."

Indeed, the situation may well be, in that type of cases, that no private person in the state can be found who can allege and prove direct injury suffered or threatened, and consequently the state alone can challenge the constitutionality of the act. Hopkins Savings Ass'n v. Cleary, 296 U.S. 315, 339, 56 S.Ct. 235, 242, 80 L.Ed. 251, 100 A.L.R. 1403. For two reasons, therefore, Pennsylvania v. West Virginia does not support the appellees' position. In Pierce v. Society of Sisters, supra, the law in contro-

versy required that all children of certain ages should be sent to public schools, and made failure by parents and guardians so to send them a misdemeanor. In that case it was alleged that (268 U.S. 510, at page 532, 45 S.Ct. 571, 572, 69 L.Ed. 1070, 39 A.L.R. 468) "The appellants, public officers, have proclaimed their purpose strictly to enforce the statute" and that the Act "has *already caused the withdrawal from its schools of children who would otherwise continue, and their income has steadily declined.*" (Italics supplied.)

Similar examples will be found in other cases in which the cause alleged has been held sufficient to permit a challenge of constitutionality. Thus, in Adkins v. Children's Hospital and Lyons, 261 U.S. 525, at page 542, 43 S.Ct. 394, 396, 67 L.Ed. 785, 24 A.L.R. 1238, the plaintiff Lyons alleged that she was employed by a hotel company; that "her services were satisfactory to the Hotel Company, and it would have been glad to retain her, but *was obliged to dispense with her services* by reason of the order of the board [Minimum Wage Board] and on account of the penalties prescribed by the act." (Italics supplied.)

In Truax v. Raich, 239 U.S. 33, at page 36, 36 S.Ct. 7, 8, 60 L.Ed. 131, L.R.A.1916D, 545, Ann.Cas.1917B, 283, it appeared that "Raich *was informed by his employer* [Truax] *that* when the law was proclaimed, and solely by reason of its requirements and because of the fear of the penalties that would be incurred in case of its violation, *he would be discharged*"; and it was alleged further "that these officers [the attorney general and the county attorney, who with the employer were joined as defendants] would prosecute the employer unless he complied with its terms [the law attacked], *and that in order to avoid such a prosecution* the employer *was about to discharge* the complainant." (Italics supplied.) In Terrace v. Thompson, 263 U.S. 197, at page 212, 44 S.Ct. 15, 16, 68 L.Ed. 255, it was alleged "that the defendant, as Attorney General, *has threatened* to and will take steps to enforce the act against the appellants if they enter into such lease, and will treat the leasehold interest as forfeited to the state, and *will prosecute the appellants criminally* for violation of the act." (Italics supplied.)

█ In short, what the appellees are attempting to do in the present cases is to plead on behalf of others who are or may be directly affected by the act and order. Appellees have no standing in the courts for

that purpose. Those other persons are not parties to these suits, nor are they complaining so far as the record shows, of any wrong or injury, suffered or threatened. It is well settled that the courts will hear objections to the constitutionality of laws only from those who are themselves affected by its alleged unconstitutionality, and efforts of litigants to plead the rights of others who are claimed to be so affected have been uniformly rejected. See Jeffrey Manufacturing Co. v. Blagg, 235 U.S. 571, 576, 35 S.Ct. 167, 59 L.Ed. 364, and cases there cited; Blackmer v. United States, 284 U.S. 421, 442, 52 S.Ct. 252, 256, 76 L.Ed. 375.

■ Nor are the appellees in the position of stockholders who may sue in the right of the company, where the latter has refused to do so. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 318, 56 S.Ct. 466, 469, 80 L.Ed. 688; Carter v. Carter Coal Co., 298 U.S. 238, 287, 56 S.Ct. 855, 862, 80 L.Ed. 1160. They occupy no position in relation to the dairy companies which warrants an appearance here in the latter's behalf; and, moreover, there is no allegation of compliance or threatened compliance by the Dairies with the act or order, which would be necessary to justify even stockholders in contesting the validity thereof.

■■ In the present cases, therefore, we are left to surmise just how the potential imposition of penalties upon the Dairies, if they do not comply with the order, will injure the appellees. This we cannot do. As was said in New York ex rel. Hatch v. Reardon, 204 U.S. 152, 160, 27 S.Ct. 188, 190, 51 L.Ed. 415, 9 Ann.Cas. 736, where an attack was made upon the constitutionality of a state law, the court "will not go into imaginary cases." See, also, Yazoo & M. R. R. Co. v. Jackson Vinegar Co., 226 U.S. 217, 219, 33 S.Ct. 40, 57 L.Ed. 193. The judicial power does not extend to the determination of abstract questions. Ashwander v. Tennessee Valley Authority, supra, 297 U.S. 288, at page 324, 56 S.Ct. 466, 472, 80 L.Ed. 688, and cases cited. Claims based merely upon assumed potential invasions of rights are not enough to warrant judicial intervention; there must be actual or threatened impairment of rights. Arizona v. California, 283 U.S. 423, 462, 51 S.Ct. 522, 528, 75 L.Ed. 1154; Hampton v. St. Louis, Iron Mt. & S. Ry. Co., 227 U.S. 456, 33 S.Ct. 263, 57 L.Ed. 596.

It results that the orders of the lower court must be reversed and the cases remanded with directions to dismiss the bills.

Reversed and remanded.