GUDGEL v. IVERSON.
Civ. No. 1494.

United States District Court
W. D. Kentucky, at Louisville.
Aug. 1, 1949.

The defendant is the market administrator of Federal Order No. 46, which regulates the handling of milk in the Louisville, Kentucky, marketing area. On March 23, 1948, the defendant notified Von Allmen that beginning with the month of April 1948, the receipts of milk from the plaintiff "will be treated as receipts from a producer, and the payment for such receipts shall be based upon the payment provisions provided for in Section 946.8 of Federal Order No. 46."

Previous to that time, and since December 1944, Von Allmen was permitted to report the receipts of milk from the plaintiff as receipts from a "handler", resulting in the plaintiff's milk being unpriced and excluded from the computation of Von Allmen's obligations to the producer-settlement fund which is maintained under the order.

During the time that Von Allmen reported plaintiff's milk as a receipt from a handler, Von Allmen paid plaintiff the Class 1 price for his milk. Subsequent to April 1948, Von Allmen paid the plaintiff the uniform or blend price, which, under the order, is the minimum price which all handlers are required to pay producers for milk received from them.

Since the uniform price is usually less than the Class 1 price, the plaintiff receives a slightly lesser amount for his milk than would be the case if Von Allmen paid him the Class 1 price.

C. Maxwell Brown, Louisville, Kentucky, for plaintiff.

David C. Walls, United States Attorney, Ben T. Cooper, Assistant United States Attorney, Louisville, Kentucky, Clarence H. Girard, Office of the Solicitor, U. S. Department of Agriculture, Washington, D. C., for defendant.

SHELBOURNE, Chief Judge.

The plaintiff is a dairy farmer who produces milk which he delivers to the plant of Von Allmen Brothers Dairy, hereinafter sometimes referred to as "Von Allmen". He receives from the Von Allmen plant a quantity of bottled milk and cream which he distributes to retail customers on a route in the Louisville milk marketing area.

Plaintiff contends, in substance, that the only reason Von Allmen refuses to pay him the Class 1 price for his milk is because Von Allmen is required to account to the producer-settlement fund for the milk of the plaintiff utilized in Class 1 at the Class 1 price. The plaintiff claims, therefore, that the defendant's action of March 23, 1948, in classifying him as a producer was "arbitrary, unreasonable, and the strict application of the Defendant's action will cause and bring about an irreparable injury and damage to the Complainant's business." Wherefore, the plaintiff prays for a preliminary and permanent injunction restraining and enjoining the defendant from directing Von Allmen or any other handler "to consider the receipt of milk from com-

plainant as a producer only, or the inclusion of said receipts in a pool of milk receipts for which the Complainant would receive blend price only * * *. The plaintiff prays in the alternative that, if this relief is not granted, the defendant be temporarily restrained from changing the plaintiff's status for a "reasonable period not to exceed twelve (12) months time to afford Complainant an opportunity to reequip the Complainant's dairy plant."

Defendant filed a motion to dismiss the complaint, contending that—

(a) The court lacks jurisdiction to grant the relief prayed for in the complaint;

(b) The complaint fails to state a claim against the defendant upon which relief can be granted; and

(c) The plaintiff has failed to join the Secretary of Agriculture who is a necessary and indispensable party.

A hearing was held June 7, 1948, on the motion for preliminary injunction and the motion to dismiss, at which hearing evidence was adduced. Thereafter, each of the parties filed briefs. On March 10, 1949, at a conference before the Court, counsel agreed to submit the case for final determination upon the basis of a complaint, the motion to dismiss, the argument and record of the hearing of June 7, 1948, and proposed findings of fact and conclusions to be submitted by the parties.

Findings of Fact.

1. This proceeding arises under the Agricultural Marketing Agreement Act of 1937, which reenacted with amendments the marketing provisions of the Agricultural Adjustment Act of 1933, as amended from time to time, 7 U.S.C.A. § 601 et seq.

The Act directs the Secretary of Agriculture to issue an order applicable to the handlers of specified agricultural commodities, or the products thereof, whenever he finds on the basis of evidence at a public hearing that the issuance of an order will tend to effectuate the declared policy of the act. Sec. 8c(1), (3), and (4), 7 U.S.C.A. § 608c (1), (3), and (4).

One of the specified commodities is milk Sec. 8c(2), 7 U.S.C.A. § 608c (2). The declared policy of the act is to maintain "such orderly marketing conditions for agricultural commodities in interstate commerce as will establish prices to farmers at a level that will give agricultural commodities a purchasing power with respect to the articles that farmers buy, equivalent to the purchasing power of agricultural commodities in the base period", defined in the act. Section 2, 7 U.S.C.A. § 602. In the case of milk, the declared policy is also to fix minimum prices to be paid to producers that will reflect the cost of producing milk and other economic factors, and will insure a sufficient quantity of pure and wholesome milk. Section 8c (18), 7 U.S.C.A. § 608c (18). An order may regulate, in the manner specified in the act, such handling of the agricultural commodity, or product thereof, as is in the current of interstate commerce, or as directly affects interstate commerce in the commodity or product thereof. Section 8c(1), U.S.C.A. 7, § 608c (1).

2. The order involved in this proceeding is Order No. 46, as amended effective October 1, 1947, 12 F.R. 6567, which regulates the handling of milk in the Louisville, Kentucky, marketing area. (The order has since been amended effective September 1, 1948, 13 F.R. 5112, and December 1, 1948, 13 F.R. 7294; however, neither of these amendments affect the issues involved in this case.)

The order of October 1, 1947, defines the Louisville, Kentucky marketing area, and fixes minimum prices that "handlers" must pay for all milk received from "producers", as those terms are defined in the order.

The order classifies milk into three classes according to its use, and establishes the use value for the milk in each class. The use value applied to Class 1 (which includes generally all skim milk and butterfat disposed of in fluid form as milk, buttermilk and milk drinks) is the highest. The use values applied to Class 11 (fluid cream and cream products disposed of in fluid form) and Class 111 (milk, the component parts of which are used to make ice cream, condensed milk, butter, cheese, or other milk products) are progressively lower. Each

handler, as defined in the order, is required to report to the market administrator appointed to administer the order, the quantity of milk received and the quantity of milk used in each class during the preceding monthly delivery period. Upon the basis of these reports, the total value of the milk priced by the order that was received by all handlers from all producers is determined. After making adjustments to reflect butterfat or other differentials, the total use value is divided by the total quantity of priced milk. The result· is a uniform minimum price that all handlers must pay their producers regardless of the use that may have been made of the milk by a particular producer. The variance among handlers in the percentage of milk used in a given class will normally mean that the use value of the milk received by a handler will be either greater or less than the total payments at the uniform minimum price that the handler is required to make to his producer. Any handler for whom there is a plus difference is required to pay the difference due to the producer-settlement fund, which is an equalization pool, while any handler for whom there is a minus difference is entitled to withdraw the difference from the fund. In this manner, all handlers can pay their producers the uniform minimum price regardless of the use they make of the milk of a particular producer.

3. Section 946.1(e) of the order defines a "producer" as "any person who produces, under a dairy farm inspection permit issued by the appropriate health authority in the marketing area, milk which is: (1) Received at a plant from which milk or cream is disposed of in the marketing area for human consumption as fluid milk or cream: * * *".

4. The plaintiff produces, under a dairy farm inspection permit issued by the City of Louisville, milk which is received at the plant of the Von Allmen Brothers Dairy, from which plant milk or cream is disposed of in the marketing area for human consumption as fluid milk or cream. The plaintiff is, therefore, a "producer" as such term is defined in the order.

5. Section 946.1(f) (1) of the order defines a "handler" as "any person who receives milk, produced under a dairy farm inspection permit issued by the appropriate health authority in the marketing area, at a plant described in paragraphs (e) (1) * * *," i.e., at a "plant from which milk or cream is disposed of in the marketing area for human consumption as fluid milk or fluid cream."

6. Plaintiff is neither the operator nor the owner of a milk plant; nor does he receive any milk at a milk plant. The milk received from Von Allmen is furnished as any other wholesale milk dealer would purchase milk. Plaintiff does not deliver milk to Von Allmen as a handler. The milk plaintiff receives from Von Allmen has been accounted for in the pool, thus the purposes of the Act are not frustrated. Hence the sale of the milk to plaintiff by Von Allmen is not the question here presented. The sale of the milk to Von Allmen is the epitome of this action.

The plaintiff is not a "handler", as such term is defined in the order. Neither is the plaintiff a "producer-handler", as such term is defined in the amendment to the· order effective October 1, 1948, 13 F.R. 7294, because the plaintiff is not a "handler", the term "producer-handler" being defined as "any person who is both a producer and a handler."

7. The Von Allmen Brothers Dairy is a "handler", and, as such, is subject to regulation under the order. The order requires each handler, including the Von Allmen Brothers Dairy, to report to the market administrator on and before the 5th day after the end of each delivery period, i.e. calendar month, all skim milk and butterfat contained in milk received from producers, handlers, and other sources, and the utilization thereof. Section 946.5(a). Inasmuch as the plaintiff is a "producer" and not a "handler", the Von Allmen Brothers Dairy is required to report the receipts of milk from the plaintiff as receipts from a "producer".

8. The quantity of skim milk and butterfat received from producers and allocated to each class is determined by a series of computations, the result of which is to eliminate from the several classes of utilization

other source milk and milk received from other handlers.

The quantity of skim milk and butterfat remaining in each class is the quantity received from producers. Section 946.3(c). For each delivery period the market administrator is required to compute the value of producer milk received by each handler by multiplying the quantity of such milk in each class by the applicable class price and adding together such amounts. Section 946.7(a). Since plaintiff's milk is "producer" milk, in computing the value of producer milk received by Von Allmen, the market administrator is required to include the plaintiff's milk along with all the other producer milk received by Von Allmen.

9. After making the computations set forth in Findings No. 8, the market administrator is required to compute the "uniform" or "blend" price. This is accomplished by combining into one total, subject to specified differentials and adjustments, the respective values of producer milk received by all handlers; adding an amount representing the cash balance in the producer-settlement fund and dividing the resulting amount by the total hundredweight of producer milk. From this amount there is subtracted not less than 4 cents nor more than 5 cents for a reserve fund. The resulting amount is the uniform price. Section 946.7(b). This is the minimum amount per hundredweight which, subject to butterfat differential, each handler must pay directly to his producers. Section 946.8(a).

10. Payments among handlers are equalized by requiring each handler to pay into the producer-settlement fund any amount by which the classification value of his producer milk is greater than the amount he has paid his producers at the uniform price, and entitling each handler to withdraw from the fund any amount by which the classification value of his milk is less than the amount which he has paid his producers at the uniform price. Section 946.2(b).

11. Defendant is the "market administrator" designated by the Secretary of Agriculture as the agency to administer the order. Section 946.2(b) of the order vests the market administrator with only the power to—

(a) Administer its terms and provisions;

(b) Receive, investigate, and report to the Secretary complaints of violations of its terms and provisions;

(c) Make rules and regulations to effectuate its terms and provisions; and

(d) Recommend to the Secretary amendments.

(These are the only powers which may be vested in a market administrator under the act. Section 8c(7) (C), 7 U.S.C.A. § 608c (7) (C) ).

12. Prior to December 1944, the plaintiff operated a milk plant at which he received milk from 4 to 5 producers, as well as milk from his own production. During that period, he was classified as a "handler" and reported as such to the market administrator. From the inception of the order on April 1, 1940, 5 F.R. 1233, until the amendment thereto effective October 1, 1946, 11 F.R. 11121, the order permitted a handler to subtract pro rate out of the milk in each class the quantity of milk of the handler's own production. (Order, as amended, effective December 1, 1944, 9 F. R. 14096). The effect of this was to exclude such milk from the pricing provisions of the order and the computation of a handler's pool obligation. In other words, a handler's own production was not "pooled" with other producer milk.

Because of these provisions of the order, which were in effect at the time, the plaintiff was not required to account to the pool for milk of his own production which he received at his plant.

13. On or about December 1, 1944, the plaintiff closed his plant because of shortages of labor and equipment. It was then that he started to deliver his milk to the Von Allmen Brothers Dairy. Because of the hardship the plaintiff was experiencing as the result of war conditions and upon his representation that he would resume operations as soon as labor and equipment became available, the market administrator continued to treat the plaintiff as a handler even though he no longer operated a plant.

The market administrator permitted the Von Allmen Brothers Dairy to report receipts of milk from the plaintiff as receipts from another "handler." Von Allmen allocated the plaintiff's milk to his Class 1 utilization and that reduced pro tanto the quantity of milk for which Von Allmen accounted to the pool in Class 1.

14. On and after December 1, 1944, when the plaintiff's milk was delivered to the Von Allmen plant, it was weighed, tested, and placed in a 400 gallon tank along with the milk of other producers. The butterfat content of the milk which the plaintiff delivered averaged approximately 3 percent, while the health ordinance of the City of Louisville required that milk distributed in the City contain not less than 3.7 percent butterfat.

15. Every other day the plaintiff received from Von Allmen milk which had been (a) standardized to 3.7 percent butterfat content; (b) pasteurized, and (c) bottled with a cap bearing the plaintiff's label. The plaintiff sold this milk to retail customers. At the end of each month, there was a settlement between Von Allmen and the plaintiff. Von Allmen credited the plaintiff with the value of his milk at the Class 1 price and charged the plaintiff for the milk he received at Class 1 price, plus a "processing" charge. These were ordinary purchase and sale transactions with the title to the milk the plaintiff delivered passing to Von Allmen at the time of the delivery. The bookkeeping and settlement at the end of the month was merely a convenient method of offsetting the sale to Von Allmen against the purchase by the plaintiff.

16. During the period December 1944, to the present, the order contained no provisions authorizing the reporting and accounting of the plaintiff's milk by Von Allmen as the receipts from another handler.

17. In May 1947, the defendant conferred with Von Allmen and the plaintiff regarding the continuation of the status of the plaintiff as a handler. As a result of this conference, the defendant wrote a letter to Von Allmen dated May 20, 1947, in which it was stated that the market administrator would continue to consider the receipts of plaintiff's milk at the Von Allmen plant "as receipts from other handlers", and requested that "you report the receipts and disposition of milk from this handler the same as you have previously."

18. The market administrator notified Von Allmen that effective for the delivery period of April 1948, the receipts of milk from the plaintiff would be treated as receipts from a producer. This notification was contained in a letter dated March 23, 1948, in which it was stated: "This action classifies the milk delivered by Mr. Gudgel as milk delivered by a producer and not as a handler as previously classified."

19. At the time of the change of the status of the plaintiff from a "handler" to a "producer", there existed no contract between the plaintiff and Von Allmen regarding the future deliveries of plaintiff's milk or as to the price the plaintiff would receive with respect to any milk delivered to Von Allmen.

20. Order No. 46 was originally issued effective April 1, 1940, 5 F.R.1233, and has been continuously in effect since that time, although there have been numerous amendments thereto. The order has never regulated anything but minimum prices which handlers are required to pay producers for milk. No quotas have ever been fixed under the order, and the defendant's title under the order has always been "market administrator."

21. During the period October 17, 1943, to September 21, 1945, the defendant was "market agent" of War Food Order No. 79-38, 8 F.R. 3794; 7 F.R. 3856. There was no relationship or connection between War Food Order No. 79-38 and Order No. 46. War Food Order No. 79-38 was issued in an effort to maintain the production of dairy products (principally evaporated milk, butter, cheese, and dry milk) at levels sufficient to supply essential civilian wartime needs by assigning quotas to distributors which represented the maximum sales or deliveries of fluid milk,

cream, and fluid milk products they could make.

22. The letter of January 16, 1945, from the defendant to the plaintiff, in which the plaintiff is referred to as a "producer-handler", was written in connection with War Food Order No. 79-38 and in the defendant's capacity as "market agent" of that War Food Order. This letter had no relation to or connection with the plaintiff's status as a "handler" under Order No. 46.

## Conclusions of Law

■ I. The complaint should be dismissed because this Court lacks jurisdiction to grant the relief prayed for in the complaint.

The plaintiff alleges in his complaint that he is a "handler" or a "producer handler" and as such he is entitled to relief under the provisions of the order. Section 8c(15) of the act provides the exclusive method by which a handler or a producer-handler may test the validity of any obligation imposed upon him in connection with an order issued pursuant to the act. The plaintiff having failed to pursue this exclusive administrative remedy, this Court has no jurisdiction to entertain any complaint concerning the action of the defendant market administrator. United States v. Ruzicka, 329 U. S. 287, 67 S.Ct. 207, 91 L.Ed. 290; La Verne Co-op Citrus Association v. United States, 9 Cir., 143 F.2d 415; United States v. Hoganburg Milk Co., Inc., D.C., 57 F.Supp. 297; United States v. Wood, D.C., 61 F.Supp. 175; United States v. Ridgeland Creamery Co., D.C., 47 F.Supp. 145.

The complaint fails to allege the invalidity of any of the provisions of Order No. 46, nor does it state that the alleged action of the defendant market administrator was taken in violation of, or contrary to, any provisions of said order. The complaint merely alleges that the action of the market administrator was arbitrary and unreasonable. No facts are stated from which this conclusion can be drawn nor were there any facts presented

in the record, which would justify such conclusion.

■ III. This Court lacks jurisdiction, because the plaintiff has failed to join the Secretary of Agriculture, who is a necessary and indispensable party.

In this action, there has been no question raised as to the jurisdiction of the Department of Agriculture with respect to the issuance of Order No. 46 or the validity thereof. Moreover, there has been no contention in this proceeding that any action or non-action on the part of the defendant was contrary to the order.

An injunction suit may not be maintained, therefore, solely against the defendant who, as a subordinate of the Secretary of Agriculture, merely performs the acts committed to him by the Secretary's order, particularly in this case where the subordinate has no power to enforce the provisions of such order, such power being vested exclusively in the Secretary. Gnerich v. Rutter, 265 U.S. 388, 44 S.Ct. 532, 68 L.Ed. 1068; Webster v. Fall, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411; Beranek v. Wallace, D.C., 25 F.Supp. 841; Massachusetts Farmers Defense Committee v. United States, D.C., 26 F.Supp. 941; Neher v. Harwood, 9 Cir., 128 F.2d 846; Barr v. Rhodes, D.C., 35 F.Supp. 223.

Although plaintiff alleged in the complaint that he was a "handler" or a "producer-handler", he has changed his position in his brief. He concedes that if the plaintiff is a handler, the court would be without jurisdiction to proceed in the action, because the plaintiff has failed to exhaust the exclusive administrative remedy provided for in the act. He now contends that he is not a handler and is bringing this action only in his capacity as a producer. The difficulty with the plaintiff's change in position is that such benefits as the plaintiff may have obtained under the order prior to April 1948 was because of his classification by the defendant as a handler. Thus, if the order is to be given any effect at all in this proceeding and, if the plaintiff does have standing to maintain the action as a producer, so as to vest

this Court with jurisdiction, the plaintiff places himself in the untenable position of asserting on the one hand that he is a producer and claiming on the other that he is entitled to benefits of the order which accrues only to handlers. Under the circumstances, if this Court were to take jurisdiction to consider the case on the merits, it would immediately thereafter have to divest itself of jurisdiction because the granting to the plaintiff of any relief would require the finding, by estoppel or otherwise, that the plaintiff was a handler.

Even though the plaintiff were successful in extricating himself from this jurisdictional dilemma, there would still remain the serious question as to whether the plaintiff has established any standing to maintain the present suit as a producer.

■ It is a well-settled rule of law that only a person whose "legal right" is violated by the unlawful conduct of another is entitled to maintain a suit. Tennessee Electric Power Co. v. Tennessee Valley Authority, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543; Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374; Com. of Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078.

As the Supreme Court said in Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 875, 84 L.Ed. 1108, "neither damage nor loss of income in consequence of the action of Government, which is not an invasion of recognized legal rights, is in itself a source of legal rights" giving standing to sue.

Where the issue of the plaintiff's standing to sue is raised, the usual point in controversy, as here, is not the basic principle itself but whether the right asserted by the plaintiff is one which the law has protected against invasion. Concerning rights which are thus protected, the Supreme Court in Tennessee Electric Power Co. v. Tennessee Valley Authority, 306 U.S. 118, 59 S.Ct. at page 369, said that the right must be "one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege."

■ The right, in other words, either must be within the class of those given protection at common law, or it must be one based on an interest which has, by statute, been granted protection through court action. Otherwise, the injury of which the plaintiff complains is damnum absque injuria, and he is without standing to sue. Alabama Power Company v. Ickes, supra.

■ The plaintiff has failed to meet any of the tests prescribed by the foregoing authorities. Neither the pleadings nor the record support any claim that the action of the defendant, market administrator, infringes upon any contract right of the plaintiff. With respect to his relations with the Von Allmen Brothers Dairies, to whom he sells his milk, the complaint merely alleges that the petitioner sells milk to Von Allmen, who admittedly is a handler and subject to Order No. 46. The complaint, therefore, does not allege a contract with Von Allmen calling for payment at a price higher than the uniform price which he receives under the terms of the Order No. 46; it does not allege that the action of the defendant compels or threatens any breach of the contract. So far as contract rights are concerned, no allegation sufficient to show invasion of a "legal right" is set forth. Wallace v. Ganley, 68 App.D.C. 235, 95 F.2d 364.

In addition, neither the statute nor the order bars the plaintiff from contracting with handlers for payment of a price higher than that which the order requires handlers to pay to producers.

Plaintiff asserts that, under the conditions created by the defendant, no handler would be willing to pay, a price above the minimum required by Order No. 46, and that the plaintiff's freedom to contract for the payment of such a higher price is therefore illusory.

There is nothing in the record to support these assumptions. Indeed, plaintiff's lack of standing follows a fortiori from the cases holding that the consumers may not bring suit to challenge minimum prices

fixed by public authority. City of Atlanta v. Ickes, 308 U.S. 517, 60 S.Ct. 170, 84 L.Ed. 440; Cf. New York City v. New York Telephone Co., 261 U.S. 312, 43 S.Ct. 372, 67 L.Ed. 673; Smith v. Illinois Bell Telephone Co., 270 U.S. 587, 46 S.Ct. 408, 70 L.Ed. 747.

In those cases the consumers were deprived of their conventional right to bargain for lower prices; to do so in the face of the order would at least involve an effort to induce violation of the law by the sellers. In the present case, on the contrary, there is no legal inhibition whatever operating against the plaintiff, since he and his handlers are free to contract at higher prices.

Decisions defining the limits of a shipper's right to maintain a suit to set aside an order of the Interstate Commerce Commission indicates the reluctance of the Supreme Court to subject administrative orders to judicial review where no legal right of the plaintiff has been invaded. Alexander Sprunt & Son, Inc., v. United States, 281 U.S. 249, 50 S.Ct. 315, 74 L.Ed. 832; Edward Hines Trustees v. United States, 263 U.S. 143, 44 S.Ct. 72, 68 L.Ed. 216; United States v. Merchants and Manufacturers Traffic Ass'n, 242 U.S. 178, 37 S.Ct. 24, 61 L.Ed. 233.

Unless the plaintiff can show that some legal right conferred upon him by the Agricultural Marketing Agreement Act or the order has been invaded by the defendant, he has no standing to contest the action of the defendant. Neither the order nor the statute regulates in any respect the conduct of producers. Order No. 46 does not require producers to do or not to do anything. Moreover, the statute itself, under which the order is issued, contains this limitation upon its regulatory scope. The act provides that no order regulating the marketing of agricultural commodities "shall be applicable to any producer in his capacity as a producer." Section 8c (13) (B), 7 U.S.C.A. § 608c (13) (B). The penal convictions for violation of orders under 8c apply only to a "handler", or an officer, agent, or employee thereof, § 8c (14), 7 U.S.C.A. § 608c (14), and just as only

handlers are subject to regulations and sanctions, so only handlers are given an administrative review, followed by court review by the Secretary's determination therein, on orders issued under the act. The plaintiff is therefore in the position of asking this court to set aside admittedly valid provisions of Order No. 46 when neither the action of which the plaintiff complains, nor the statute or the order impose any restrictions or requirement upon him.

The facts in the instant case are substantially different from those involved in Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733, which held that a producer had standing to test the alleged invalidity of certain deductions from the producer-settlement fund established under the Boston milk order. The Boston milk order provided for a deduction from the uniform price an amount which was paid over to cooperative associations. Producers who were not members of cooperative associations contended that such deductions were not authorized by the Agricultural Marketing Agreement Act. The Supreme Court held that, insofar as the uniform price was concerned, the act conferred upon producers the right to receive the minimum uniform price without any illegal deductions.

Producers had a financial interest in the producer-settlement fund and had standing to protect that interest. The Court pointed to United States v. Rock Royal Co-op., Inc., et al., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446, which held that handlers were without standing to question the use of the fund because they had no financial interest in it. All the order required of them was to pay the minimum class prices. How the amounts were to be distributed among producers was not a matter in which they were legally concerned. If the Court in the Stark case had ruled that producers likewise had no standing, there would be no one standing to protect the fund.

Here there is no such hiatus.

After the plaintiff's milk was received at the Von Allmen plant and commingled with other milk in the plant, the plaintiff's legal

interest in such milk, insofar as the order is concerned, ceased or became merged with the primary interest of Von Allmen, who was directly subject to regulation under the order. If the plaintiff had any legal interest in the milk after it was received by Von Allmen, such interest was secondary and subordinate to and dependent upon the handler's interest. The plaintiff recognized this in his complaint when he prayed that the defendant be restrained and enjoined from directing Von Allmen Brothers Dairy to consider the receipt of plaintiff's milk as a receipt from a producer only or requiring Von Allmen Brothers to include the plaintiff's milk in the pool computations. The act evidently contemplated the merger of the interest of a producer with that of a handler with respect to the same obligation, because it provides only that the handler may utilize the administrative remedy to test the validity of the obligation. If Congress had intended the interest of the producer and the handler to be several with respect to the same obligation, thus enabling each of them to pursue independent remedies, it would have so provided. The fact that the act did not provide for suits by producers to test the validity of an obligation imposed upon the handler is indicative of the intent of Congress not to permit a producer, in such case, to pursue a course of action independent of the handler. If a producer were to be permitted to contest, independently of a handler, an obligation imposed upon the handler, there would arise the distinct possibility of different courts rendering different decisions with respect to the same obligation, a result which should be avoided if at all possible.

■ Where a handler brings an action under § 8c (15) (A) of the act with respect to an obligation imposed upon him, and the Secretary's ruling results in the dismissal of the handler's petition, the only court having jurisdiction to review the Secretary's ruling is the court in the district in which the handler is an inhabitant, or has his principal place of business. The plants of handlers are frequently located in a district other than that in which the market administrator may have his personal or legal residence. For example, there are many plants in Indiana which are subject to regulation under the Louisville milk order. If a producer delivering milk to such a plant brings a suit against the defendant market administrator, he would have to institute that suit in the Western District of Kentucky. The handler, however, would have to test the validity of the obligation by filing a petition with the Secretary of Agriculture, from whose ruling appeal would lie only to a district court in Indiana. If the handler was violating the order with respect to the obligation, the Government, of course, would counterclaim in the action to compel the handler to comply with the provisions of the order, and the Government might be successful in such counterclaim. On the other hand the producer might be successful in its action against the market administrator to restrain the market administrator from enforcing the obligation. Thus, we would have a court in Indiana compelling the handler to make a certain payment to the market administrator and the court in Kentucky restraining the market administrator from accepting such payment. If the decisions in these cases were appealed, the Indiana decision would go to the Court of Appeals for the Seventh Circuit, whereas the Kentucky decision would go to the Court of Appeals for the Sixth Circuit. The only way in which this incongruity could be avoided would be for the producer and handler to join in the same action. However, with respect to the instant proceeding, the handler, Von Allmen, has not been joined or made a party to the action, nor could he be joined or make a party because the exclusive remedy insofar as he is concerned is the administrative remedy provided for under § 8c (15) of the act. It is, therefore, my view that where a producer is asserting an interest in some obligation imposed upon a handler, the validity of the obligation must be tested in the first instance in a proceeding before the Secretary of Agriculture.

The court in the Stark case [321 U.S. 288, 64 S.Ct. 571] recognized that "the terms of the Order are largely matters of administrative discretion as to which there

844

is no justiciable right or are clearly authorized by a valid act. United States v. Rock Royal Co-op., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446.

"Technical details of the milk business are left to the Secretary and his aides." Under the facts of the case here, the plaintiff, as a producer, has "no justiciable right."

■ V. Defendant's alleged interpretation of the order was not binding on the Secretary of Agriculture nor does it create an estoppel against the enforcement of the order.

The plaintiff does not question the validity of the Louisville milk marketing order or any provisions thereof. His sole basis for challenging the application of the order to milk delivered by the plaintiff to the Von Allmen plant is that, for a period of approximately four years the defendant market administrator did not require the Von Allmen dairy to pool the plaintiff's milk. If the market administrator's action may be considered an interpretation of the order, such interpretation was totally unauthorized, was not binding on the Secretary of Agriculture, and did not create an estoppel against the enforcement of the order.

The order authorizes the market administrator to "administer the terms and provisions" of the order, but nothing in the order suggests or connotes that he shall or may issue interpretations that are binding on the Secretary. The performance of his duties or the exercise of his powers does not call for the issuance of interpretations that are binding on the Secretary. The specificity of the powers and duties of the market administrator clearly indicates that any unauthorized and plainly erroneous interpretation by the market administrator is not binding on the Secretary nor does it estop the Federal Government from seeking to enforce the order issued by the Secretary on the basis of the evidence adduced at the public hearing and in conformity with the finding that at least two-thirds of the producers favored the issuance of the order. It was held in Queensboro Farm Products v. Wickard, 2 Cir., 137 F.2d 969,

982, including footnote 21, that the market administrator is without "power to bind the Secretary by his (the market administrator's) own unauthorized interpretations."

The lack of power on the part of the market administrator to issue an interpretation binding on the Secretary, or so as to estop the Secretary if the interpretation is relied on, is not unusual. The principle is established by a number of cases in which the United States has been a party.

In United States v. Globe Indemnity Co., 2 Cir., 94 F.2d 576, 578, it was contended that the United States was estopped because in reliance on a letter and certificates of the collector of internal revenue, the surety released its collateral and lost its right to obtain indemnity from its principal. The Court rejected the argument of estoppel and disposed of the contention by stating that—"Between private individuals such an objection might have been good. But the government stands in a different position. There would seem to have been no authority on the part of the collector to furnish a tax search binding on the Commissioner."

In Nichols & Co. v. Secretary of Agriculture, 1 Cir., 131 F.2d 651, 659, a case arising under the Commodity Exchange Act, 7 U.S.C.A. § 1 et seq., it was contended by the petitioners that even if the practice pursued by the petitioners was contrary to the statute and the regulations in effect thereunder, the officer in charge of the New York Office of the Commodity Exchange Administration approved the practice, and in reliance on that approval the petitioners engaged in the marketing transactions later asserted by the Secretary to be in violation of the statute and the regulations. The respondent, the Secretary of Agriculture, did not deny the allegation that the interpretation was issued by the officer in charge of the New York office of the Commodity Exchange Administration, or that the petitioners relied on the interpretation and conducted their business in accordance with the interpretation. The Court stated that it must assume, therefore, that the petitioners are correct in their statement of the facts, but the Court concluded that the "official

had no authority to waive the requirements of a regulation and, therefore, his action could not estop the respondent."

The foregoing cases are in accord with the principle established in Federal Crop Insurance Corporation v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10; United States v. Stewart, 311 U.S. 60, 61 S.Ct. 102, 85 L.Ed. 40; United States v. San Francisco, 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050; Wilber National Bank v. United States, 294 U.S. 120, 55 S.Ct. 362, 79 L.Ed. 798; Utah v. United States, 284 U.S. 534, 535, 52 S.Ct. 232, 76 L.Ed. 469; Sutton v. United States, 256 U.S. 575, 41 S.Ct. 563, 65 L.Ed. 1099; Utah Power & Light Co., v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L. Ed. 791; Bowles v. Lentin, 7 Cir., 151 F. 2d 615; Bowles v. Indianapolis Glove Co., 7 Cir., 150 F.2d 597; Nelson v. Hainsworth, 3 Cir., 149 F.2d 367; Wells Lamont Corporation v. Bowles, Em.App., 149 F.2d 364; and Birmingham v. United States, 8 Cir., 4 F.2d 508, 509.

In the Federal Crop Insurance Corporation case, 332 U.S. 380, 68 S.Ct. 1, 2, an official of the governmental agency assured an applicant for insurance that his entire crop of wheat was insurable under the rules and regulations of the governmental agency. Thereupon the applicant for insurance was submitted, and the policy was made effective. Subsequently the crop of wheat was destroyed by drought. The governmental agency disclaimed liability because its regulations, which were outstanding at the time of the application and issuance of the policy, precluded insurance with respect to reseeded wheat—the wheat covered by the insurance policy. In sustaining the Government's contentions of non-liability, the Court said—

"The case no doubt presents phases of hardship. We take for granted that, on the basis of what they were told by the Corporation's local agent, the respondents reasonably believed that their entire crop was covered by petitioner's insurance. And so we assume that recovery could be had against a private insurance company. But the Corporation is not a private insurance company. It is too late in the day to urge that the Government is just another private litigant, for purposes of charging it with liability. * * * Whatever the form in which the Government functions, any one entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority. * * *

"If the Federal Crop Insurance Act [7 U.S.C.A. § 1501 et seq.] had by explicit language prohibited the insurance of spring wheat which is reseeded on winter wheat acreage, the ignorance of such a restriction, either by the respondents or the Corporation's agent, would be immaterial and recovery could not be had against the Corporation for loss of such reseeded wheat. Congress could hardly define the multitudinous details appropriate for the business of crop insurance when the Government entered it. Inevitably 'the terms and conditions' upon which valid governmental insurance can be had must be defined by the agency acting for the Government. And so Congress has legislated in this instance, as in modern regulatory enactments it so often does by conferring the rule-making power upon the agency created for carrying out its policy. * * *

"Accordingly, the Wheat Crop Insurance Regulations were binding on all who sought to come within the Federal Crop Insurance Act, regardless of actual knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance. * * * The 'terms and conditions' defined by the Corporation, under authority of Congress, for creating liability on the part of the Government preclude recovery for the loss of the reseeded wheat no matter with what good reason the respondents thought they had obtained insurance from the Government."

It is well settled that the United States is neither bound nor estopped by the unauthorized acts of its officers or agents.

Those dealing with an officer or agent of the United States "must be held to have had notice of the limitations upon his authority". Sutton v. United States, 256 U.S. 575, 41 S.Ct. 563, 65 L.Ed. 1099; Wilber National Bank v. United States, 294 U.S. 120, 55 S.Ct. 362, 79 L.Ed. 798; and Sioux Tribe v. United States, 316 U.S. 317, 62 S.Ct. 1095, 86 L.Ed. 1501. As Mr. Justice Holmes put it—"Men must turn square corners when they deal with the Government." Rock Island A. & L. R. Co. v. United States, 254 U.S. 141, 41 S.Ct. 55, 56, 65 L.Ed. 188.

The market administrator was employed for the purpose of performing certain administrative functions under the order "in accordance with its terms and provisions." No discretion or authority could have been vested in the market administrator to amend, by means of an interpretation or otherwise, the regulatory requirements of the Federal order. The plaintiff is contending, in effect, that the market administrator, by interpretation, can modify or change the provisions of the order. The power to amend the order, however, is vested only in the Secretary, 7 U.S.C.A. § 608c (17). Even the Secretary cannot amend the order by merely issuing an interpretation. The Secretary can amend the order only on the basis of substantial evidence adduced at a public hearing, and even then the amendment must be approved by at least two-thirds of the producers. The market administrator could not, under the statute, be empowered to amend the order merely by issuing an interpretation—without approval of the Secretary, without a public hearing, and without ascertaining whether at least two-thirds of the producers favor the amendment.

That the interpretation of the market administrator, as relied on by the plaintiff, could not be binding on the Secretary is in accord with the rationale of United States v. San Francisco, 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050, in which the Department of the Interior issued certain administrative interpretations on which the defendants relied in entering into certain arrangements with respect to the generation, sale, and distribution of electric energy. It was held by the Supreme Court in that case that the United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or issuing an interpretation which is contrary to the requirements under the statute.

It was held in Utah v. United States, 284 U.S. 534, 52 S.Ct. 232, 76 L.Ed. 469, that an interpretation by a Special Assistant to the Attorney General could not be the basis of an estoppel against the United States, because he was "without authority to dispose of the rights of the United States in its mineral lands and could not estop it from asserting rights which he could not surrender."

The market administrator was without authority, and could not have been vested with authority, to issue an interpretation which is tentamount to an amendment to the Federal order. Any such interpretation by the market administrator relative to a modification of the order could not estop the Secretary or the United States from asserting that the requirements of the order must be observed.

In view of the foregoing, defendants motion to dismiss should be granted and an order to that effect will be presented by Counsel for defendant.