**NEWARK MILK AND CREAM CO.,**
Plaintiff,

v.

**Ezra Taft BENSON, Secretary of Agriculture of the United States of America,**
Defendant.

Civ. No. 242–59.

United States District Court
D. New Jersey.

Dec. 30, 1959.

Gilhooly, Yauch & Fagan by Edward J. Gilhooly, Newark, N. J., for plaintiff.

Chester A. Weidenburner, U. S. Atty., by Charles H. Hoens, Jr., Asst. U. S. Atty., Newark, N. J., Julius C. Krause, Office of Gen. Counsel, Dept. of Agriculture, Washington, D. C., for defendant.

MEANEY, District Judge.

An action was instituted by the Newark Milk and Cream Company against Ezra Taft Benson, Secretary of Agriculture, asking effectively for a review of an order of the Secretary made through a judicial officer of the Department of Agriculture. The action is brought under the Agricultural Marketing Agreement Act of 1937 (7 U.S.C.A. § 601 et seq.), provision 608c(15) (B) of which vests jurisdiction in district courts to review rulings of the Secretary of Agriculture.

Under the authority of the act above cited, the Secretary, through an officer designated under the provisions of 5 U.S.C.A. §§ 516a, 516b and 516c, issued Order No. 27, 7 C.F.R. Part 927, regulating the handling of milk in the New York Metropolitan Milk Marketing Area. This order has been amended at various times since its promulgation.

Pursuant to the terms of this order plaintiff filed monthly reports for the period of May, 1954 through March, 1955. These reports were filed with an officer duly designated to administer the provisions of Order No. 27 and covered the operation of the plaintiff's pool plants at Canisteo and Oquaga, New York. An audit of these reports was made by the Market Administrator. These reports indicated that skim milk was being shipped from the New York pool plants to a non-pool plant operated by the plaintiff at Newark, N. J. An audit of the records of the plaintiff's non-pool plant at Newark was made by the Administrator to determine the use and disposition made of the skim milk in question, in view of the fact that the New York pool plants reported that this skim milk was not subject to the skim milk differential. The audit revealed receipt at the Newark plant of the skim milk from the New York plants but disclosed further that there was no account of the use and disposition of large quantities of the skim milk from that point onwards. Thereupon the Market Administrator billed the plaintiff charging the unaccounted-for skim milk with the skim milk differential. The bills totaled $8,054.72.

Plaintiff paid the bills and filed a petition with the Secretary of Agriculture under the terms of Section 8c(15) (A) of the Agricultural Marketing Agreement Act of 1937 (7 U.S.C.A. § 608c(15) (A). A hearing was held and a recommended report was submitted by the Examiner. To this report exceptions were filed and a further hearing was held before the Judicial Officer who, after argument

heard, dismissed the petition. The instant complaint was then filed in this court, seeking a review of the decision. Answer was filed and the plaintiff then moved for summary judgment, the defendant making a similar motion.

On the pleadings, the plaintiff asks for a refund of the $8,054.72 paid into the Producers' Settlement Fund in accordance with the direction of the Market Administrator. As before indicated, this payment represented the fluid skim differential on fluid skim milk shipped from plaintiff's New York pool plants (licensed to sell within the marketing area) to its non-pool plant (not licensed to sell within the marketing area). Admittedly the skim milk was received at Newark (outside the marketing area) from the New York pool plants, but the ultimate use or disposition of it was not disclosed. The Market Administrator then applied Sec. 927.44 of Order No. 27, as it read during the period in question:

"Section 927.44 *Fluid Skim Differential.* For skim milk derived from Class II or Class III milk which skim milk enters the marketing area in the form of milk, fluid skim milk, * * * or cultured milk drinks, and there utilized or disposed of in one of such forms, *and for all other skim milk derived from Class II or Class III milk which is not established to have been otherwise utilized or disposed of,* the handler shall pay a fluid skim differential * * *." (Emphasis added.)

The determination of the motions before the court depends on whether or not the action of the Administrator was "in accordance with law." Incidental to the various amendments to Order No. 27, involving classification of producer milk, and place of classification, the Secretary ruled as follows:

"Milk classified in the present Classes II–B through IV–B should be classified in one class and designated as Class III. Class II–A should be redesignated as Class II.

A fluid skim differential applicable to skim milk now classified as Class V–A should be substituted for the present Classes V–A and V–B. Prices for Class II and Class III milk should include the value of the milk for manufacturing."

This referred to classifications theretofore existing in the famous Order No. 27, and must be read in conjunction with it and its amendments. This court does not deem it necessary for the purposes of its determination to wend its mental peregrination through the maze of intricate and, to be sure, somewhat loosely phrased provisions of the methods of classification and ultimate use and disposition of that commodity erstwhile considered so simply by it as a nourishing liquid at hand for babes and adults, all unaware of the complexities of its marketing. Suffice it to say at this point that stress will be placed on that language in the selected portions of the extensive provisions of the amended order as seem dispositive of the present dispute.

■ The emphasized language of Sec. 927.44 of the order would seem to place the burden of establishing that the skim milk has been "otherwise utilized or disposed of" on the handler. Only the records of the handler or his consignees will show this. Any endeavor to place this burden on the Market Administrator would be unrealistic, if not futile. Reference to a further provision of the Order, Sec. 927.31, supports the court's position as to the burden of proof.

"Section 927.31 *Burden of Proof.* In establishing the classification of milk received from producers, the burden rests upon the handler who received the milk from producers to show that the milk should not be classified as Class I–A *and that the skim milk in Class II and Class III milk should not be subject to the fluid skim differential * * *.*" (Emphasis added.)

The emphasized words, however irrelevantly associated with the forepart of the paragraph, are explicit.

No particularly heavy burden is placed on the plaintiff since the product was shipped to one of its own plants outside the marketing area. It is simply a matter of adequate intra-company records. Whatever hardship might follow if it had shipped to an unassociated company which kept no records of final use and disposition may be an unfortunate consequence of lack of foresight in legislation.

Plaintiff urges that shipment of skim milk to its plant outside the marketing area and proof of its receipt thereat satisfy its obligation under Section 927.-44 to establish that the skim milk was "otherwise utilized or disposed of." In support of its contention the plaintiff insists that the non-pool plant at Newark is not required to file a report with the Market Administrator. It further argues that no audit of the records of a non-pool plant concerning the disposition of skim milk is required and that Form MA–1, the report of pool plants, has no provision for skim milk shipped outside the marketing area. None of these negative situations contravenes the explicit language of the order hereinbefore referred to.

Nor is there merit in the contention of the plaintiff that the Market Administrator's ruling places a burden of proof on the handler at a non-pool plant. The burden is categorically placed on the pool plant handler, though the records of the non-pool plant must be relied on to sustain the burden of proving that the skim milk did not ultimately enter the marketing area. That ways and means of evading the prohibition of such entry may be resorted to, does not invalidate the requirement.

The reference by plaintiff to a statement by the Secretary in a decision on proposals to amend Order No. 27 avails plaintiff naught since the court feels that it is not applicable to a situation such as exists in the present controversy, as the differential is being applied only because the plaintiff offers no proof of utilization outside the marketing area and the Secretary's language refers to fluid skim shown to be utilized outside the marketing area.

In view of the foregoing, the motion of the defendant for summary judgment is granted, with consequent denial of the plaintiff's motion.

Let this opinion serve as findings of fact and conclusions of law.

Let an order in conformity herewith be submitted.