**NEWARK MILK AND CREAM CO.,**
Plaintiff-Appellant,

v.

**Ezra Taft BENSON, Secretary of Agriculture of the United States of America, Defendant-Appellee.**

No. 13161.

United States Court of Appeals
Third Circuit.

Argued Dec. 1, 1960.

Decided Feb. 27, 1961.

Edward J. Gilhooly, Newark, N. J. (Gilhooly, Yauch & Fagan, Newark, N. J., on the brief), for appellant.

Mark R. Joelson, Washington, D. C., (George Cochran Doub, Asst. Atty. Gen., Chester A. Weidenburner, U. S. Atty., Newark, N. J., Morton Hollander, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before McLAUGHLIN, HASTIE and FORMAN, Circuit Judges.

FORMAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of New Jersey granting a mo-

tion by the appellee, the Secretary of Agriculture of the United States of America (the Secretary), for summary judgment [1] and denying a similar motion by the appellant, Newark Milk and Cream Company (Newark Milk). Involved is the construction to be given certain sections of Federal Marketing Order No. 27 [2] (Order 27) as they existed during the period of June 1954 to March 1955, when Order 27 only regulated the handling of milk in the New York Milk Marketing Area (Marketing Area).[3]

Newark Milk, a New Jersey corporation, operated pool plants [4] at Canisteo and Oquaga, New York, respectively, and also operated a non-pool plant at Newark, New Jersey. It received milk at its pool plants in the State of New York from producers and shipped it to its non-pool plant in Newark, New Jersey in the form of cream, milk and skim milk. There it was processed, packaged and distributed to its customers. The Newark plant was not licensed to sell, distribute, or otherwise deliver milk in the Marketing Area from its non-pool plant in Newark.

From June 1954 through March 1955, Newark Milk shipped 473,088 pounds of skim milk from its pool plants in New York to its non-pool plant in Newark. It is not disputed that all of this milk was received at the non-pool plant in Newark. The Market Administrator conducted an audit of the records of the non-pool plant in Newark which while indicating the receipt of the skim milk in Newark did not disclose what ultimate disposition or utilization had been made of large quantities of it. Thereupon the Market Administrator charged Newark Milk with the differential on the 473,088 pounds of skim milk pursuant

to § 927.44 of Order 27. It was billed for $8,054.72 which it paid to the producer-settlement fund. Following the payment of the above sum Newark Milk petitioned the Secretary under § 8c(15)(A) of the Agricultural Marketing Act of 1937, 7 U.S.C.A. § 608c(15) (A) (Act) complaining that Order 27 was improperly applied and requesting the return of the payment.

A hearing was held before an Examiner as a result of which he issued a report recommending the dismissal of the petition. To this report exceptions were filed and a further hearing was held before the Judicial Officer of the Department of Agriculture who denied the petition. Newark Milk then sued for a review in the United States District Court of New Jersey under § 8c(15)(B) of the Act, 7 U.S.C.A. § 608c(15)(B). The Secretary and Newark Milk each moved for summary judgment. As indicated heretofore the court granted the motion of the Secretary and found that the order of the Market Administrator was "in accordance with law."

The two sections of Order 27 basically involved here are §§ 927.44 and 927.31. Section 927.44 provides in pertinent part:

"Sec. 927.44 Fluid skim differential. For skim milk derived from Class II or Class III milk which skim milk enters the marketing area in the form of milk, fluid skim milk * * * or cultured milk drinks and there utilized or disposed of [in one of such forms], *and for all other skim milk derived from Class II or Class III milk which is not established to have been otherwise utilized or disposed of, the handler shall pay a fluid skim dif-*

---

1. Newark Milk & Cream Company v. Benson, 179 F.Supp. 182.

2. 7 C.F.R. (1952 ed., 1955 ed.) All references to sections of Order 27 will be found therein under identical section numbers as mentioned herein.

3. It was not until August 1, 1957 that Order 27 was amended to extend the

Marketing Area to northern New Jersey and additional areas in New York.

4. Mainly establishments which handle milk or milk products meeting specified requirements for the Marketing Area. 7 C.F.R. §§ 927.20, 927.22, 927.25, 927.27 (1952 ed., 1955 ed.).

*ferential * * *."* (Emphasis added.)

Section 927.31 provides in pertinent part:

"Sec. 927.31 Burden of proof. In establishing the classification of milk received from producers, *the burden rests upon the handler who received the milk from producers* to show that the milk should not be classified as Class 1-A, and that *the skim milk in Class II and Class III should not be subject to the fluid skim differential * * *."* (Emphasis added.)

Newark Milk submits that it fully complied with the above sections when the records at its pool plants and non-pool plant established that the skim milk had been shipped and received at its non-pool plant in Newark which, at the time, was outside the Marketing Area. In other words, it contends that §§ 927.44 and 927.31 did not require it to establish the ultimate utilization or disposition of the skim milk outside the Marketing Area.

In general, Order 27 [5] seeks to achieve a fair division of the more profitable fluid milk market among all producers in the Marketing Area thereby eliminating the disorganizing effect of cutthroat competition. United States v. Rock Royal Co-operative, Inc., 1939, 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446; Elm Spring Farm v. United States, 1 Cir., 1942, 127 F.2d 920.

Section 927.44 is the means of fulfilling this goal as far as fluid skim milk is concerned. It requires pool handlers to make payments to the producer-settlement fund for the fluid skim milk which they send into the Marketing Area or *for which they do not otherwise account.* As argued by the Secretary, when fluid skim milk enters the Marketing Area and no differential is paid with respect to it, the purpose of § 927.44 is frustrated regardless of whether entry into the area is from a pool plant or a non-pool plant. In either event if no differential is paid the benefit to the producers covered by Order 27, gained from the more lucrative fluid milk market is lost since the uniform price is, of necessity, lowered.

In view of the above it would appear clear that the words "otherwise utilized or disposed of" as they appear in § 927.44 mean ultimate utilization or disposition outside the Marketing Area. It is only by such construction that the purpose of the section can be fulfilled. See Hogansburg Milk Co. v. Jones, 6 Agri. Dec. 1036 (1946); United States v. Ridgeland, D.C.W.D.Wis.1942, 47 F. Supp. 145.

---

5. In brief Order 27 operates in the following manner:

Basically milk is classified into three categories according to its uses. Class I is comprised of fluid milk; Class II consists of milk used to produce cream and Class III, of milk used to produce manufactured products, i. e., butter, cheese, etc. The Market Administrator computes the value of milk used by each pool handler by multiplying the quantity of milk he uses in each class by the class price and adding the results. The values for all handlers are then combined into one total. That amount is decreased or increased by certain subtractions or additions. The result is divided by the total quantity of milk that is priced pursuant to the regulatory program. The figure thus obtained is the basic or uniform price which must be paid to producers for their milk. Thus all producers receive a uniform price irrespective of the use to which their milk is put.

Each handler whose own total use value of milk for a particular delivery period, i. e., a calendar month, is greater than his total payments at the uniform price is required to pay the difference into an equalization or producer-settlement fund. Each handler whose own total value of milk is less than his total payments to producers at uniform price is entitled to withdraw the amount of the difference from the equalization or producer-settlement fund. Thus a composite or uniform price is effectuated by means of the equalization or producer-settlement fund.

For a more detailed discussion see United States v. Rock Royal Co-operative, Inc., 1939, 307 U.S. 533, 59 S.Ct. 993.

Newark Milk contends that while Order 27 distinguished milk, skim milk and fluid skim milk, as defined in §§ 927.105, 927.106 and 927.107,[6] the agency officials and the District Court failed to observe the distinctions. The charge is not substantiated. On the contrary, as will appear later, no confusion occurred in the application of the relevant sections of Order 27 to skim milk, the only product involved.

Newark Milk contends that the Market Administrator erred in applying to it the requirements of § 927.54 [7] which provide for verification of reports by audit of the "handler or person upon whose disposition of milk such handler claims classification." because that section refers to milk and not to skim milk. It urges that § 927.54 was adopted to enable the Market Administrator to "follow through any classification which is made under § 927.33",[8] wherein it is

provided that the handler at the pool plant who receives milk from producers may elect to have a classification made at the pool plant or at the non-pool plant to which the milk has been shipped. In the latter event the advantage of a lower classification may be had. Since no classification of milk is here involved Newark Milk concludes that § 927.54 casts no duty upon it to keep records at its non-pool plant for verification by the Market Administrator.

■ Section 927.54 does not compel the recipient non-pool plant to keep records. But this fact cannot detract from the duty imposed on the pool plant handler by §§ 927.31 and 927.44 to establish the ultimate utilization or disposition of skim milk outside the Marketing Area. Furthermore § 927.54 provides specifically for the verification of the records of the pool plant handler. Indeed, in the instant case, the Secretary

6. "Sec. 927.105. *Milk*

"'Milk' means (a) the product delivered to a plant by dairy farmers as cow's milk, or (b) the product composed of skim milk and of not less than 3.0 percent nor more than 15 percent butterfat. This definition shall not be deemed to include products that are included in other definitions."

"Sec. 927.106. *Skim milk*. 'Skim milk' means any part or parts of milk as defined in § 927.105 (a) except butter fat."

"Sec. 927.107. *Fluid skim milk*. 'Fluid skim milk' means the product consisting principally of uncondensed skim milk, including buttermilk obtained from churning, and containing less than 3.0 percent butterfat." 7 C.F.R.

7. "Sec. 927.54 Verification of reports and payments. The Market Administrator shall promptly verify all reports and payments of each handler by audit of such handlers records and of the records of any handler or person upon whose disposition of milk such handler claims classification, and each such handler shall, during the usual hours of business, make available to the market administrator or his representative such records and facilities, of his own, or other persons, as will enable the market administrator to:

"(a) Verify the receipts and disposition of all milk required to be reported pursuant to Secs. 927.50 through 927.53,

and, in case of errors or omissions, ascertain the correct figures: * * *."

8. "Sec. 927.33 Plant at which classification is to be determined. Classification shall be determined at the plant at which milk is received from dairy farmers: *Provided*, That if such milk is shipped in the form of milk or cream to another plant or other plants, it shall be classified, subject to the provisions of paragraphs (a) through (e) of this section, at the plant or plants to which it is shipped, and there shall be no limit on the number of interplant movements in the form of milk or cream except as set forth in paragraphs (a) through (e) of this section.

*       *       *       *       *

"(d) Except as set forth in paragraph (e) of this section, the classification of milk shipped in the form of milk and of milk the butterfat from which is shipped in the form of cream to a non-pool plant shall be determined at the non-pool plant, unless the handler operating the pool plant from which such shipments are made to the non-pool plant elects in writing on his monthly reports to have classification of all milk or cream received during the month at such handler's pool plant and shipped as milk or cream to the non-pool plant determined at the pool plant from which the milk or cream is shipped to the non-pool plant. * * *"

does not argue that § 927.54 required Newark Milk to keep records at its non-pool plant to show that no fluid skim milk differential was due but does submit, and we agree, that the keeping of such records could have been relied on in satisfying the burden of the pool plant operation of Newark Milk.[9]

■ Newark Milk also contends that to require it to show the ultimate disposition or utilization of the skim milk would shift the burden of proof from the pool plant handler, i. e., the handler who received the milk from producers. The contention is without merit. Section 927.31 places the burden on the pool plant handler of proving that the fluid skim milk differential is not applicable. That is where it remains. The fact that the burden may be satisfied from the records of the non-pool plant does not shift the burden of proof to the latter.

■ Newark Milk next refers to an instruction in a form provided by the Market Administrator entitled "Pool Plant Report" (Form MA–1, Rev. 3154), which is as follows:

"2. Fluid Skim Differential

"On the line for fluid skim differential insert the total skim pounds which enters the marketing area in the form of milk, fluid skim milk, or in the form of cultured or flavored milk drinks containing less than 3.0 percent or more than 5.0 percent of butterfat, and all skim milk which is not accounted for in some product leaving or on hand at this plant."

Newark Milk contends that the instruction is in accordance with its interpretation of § 927.44 and that it fully complied with the instruction when it reported that it had shipped the skim milk to its non-pool plant outside the

Marketing Area. This contention cannot prevail. The quoted instruction does not negate the clearly imposed duty set forth in §§ 927.31 and 927.44. Were we to accept this contention fluid skim milk could eventually enter the Marketing Area with no differential being paid with respect to it. As to this Newark Milk counters by noting that any handler in the Marketing Area who received the skim milk would be required by § 927.31 to establish its source or pay a high rate to the producer-settlement fund. However, the fact that § 927.31 provides the Administrator with another method of checking on fluid skim milk which enters the Marketing Area does not detract from the duty imposed by §§ 927.31 and 927.44. Nor does the further argument by Newark Milk that it was not licensed to distribute the milk in New York from its Newark plant and therefore the skim milk in question was not likely to have been disposed of in the Marketing Area, relieve it of its burden to prove ultimate utilization or disposition outside the Marketing Area.

■ Newark Milk submits further that for a considerable time prior to the period between June 1954 and March 1955, its records were kept in the same manner as during the time in question. The Market Administrator audited the records then and did not charge a differential for skim milk even though the records of the non-pool plant at Newark did not show the complete disposition of the skim milk. It concedes that the prior failure to charge the differential does not work an estoppel against the Market Administrator to apply the differential here. It does, however, contend that the prior failure indicates that the Market Administrator interpreted §§ 927.31 and 927.44 as it seeks to have

9. Oral testimony was submitted before the Examiner to the effect that some of the skim milk received at the Newark establishment was used for the purpose of flushing pipes of the plant after they had been cleaned by running chlorine water through the system. Also there was testimony that unsold skim milk returned from the routes was dumped. This evidence was properly rejected by the Secretary. It was at its best general and unspecific and never offered to the Market Administrator.

them construed now. The record affords no evidence as to why the Market Administrator did not impose the differential in the past. Hence the contention is purely speculative. Moreover, the clear provisions of §§ 927.31 and 927.44 together with their obvious purpose cannot be avoided by what may have been prior administrative lapses.

Finally Newark Milk relies on a decision of the Secretary, Issue No. 9,[10] filed December 14, 1953, after public hearings on proposals to amend Order 27 by, among other things, extending the applicability of the differential rate to skim milk in fluid forms outside of the marketing area. It is claimed that this decision "completely negates the contention of the Market Administrator that plaintiff [Newark Milk] had to show the utilization outside the Marketing Area * * * [or] the utilization of the skim milk in dispute at Newark, New Jersey." because it makes clear that disposition at the pool plant was determinative with respect to § 927.44. There is no design here to apply the fluid skim milk differential "to fluid skim utilization outside the marketing area" as mentioned by the Secretary in the last paragraph of his statement. If anything that paragraph indicates that the burden would remain on the pool plant handler absent the application of the differential to skim milk utilized or disposed of outside the Marketing Area.

■ In view of the above we hold that §§ 927.31 and 927.44 required Newark Milk to establish the ultimate disposition or utilization of the skim milk in question outside the Marketing Area and that it did not satisfy that burden when it established that the skim milk was received at its non-pool plant in Newark.

The determination of the Market Administrator that the fluid skim milk differential was applicable in this case, under §§ 927.31 and 927.44 of Order 27, as upheld by the Secretary of Agriculture and the District Court, was in accordance with law.

Hence the summary judgment of the District Court in favor of the appellee, the Secretary of Agriculture of the United States of America, and the order denying the motion of the appellant, Newark Milk and Cream Company, for summary judgment, will be affirmed.

10. "Issue No. 9—Evidence in the record does not justify any change in the fluid skim differential either with reference to the skim milk to which the differential should be applied or as to the amount of the differential. The proposal contained in the notice of hearing was to make the fluid skim differential at the present rate applicable not only to skim milk disposed of in the marketing area in the form of milk, fluid skim milk, and cultured milk drinks but also to skim milk utilized in such forms outside the marketing area. Modifications of the hearing notice proposal were presented at the hearing including a proposal not to apply the fluid skim differential to skim milk disposed of to food processing plants within the marketing area or under some circumstances to skim milk not shown to have been disposed of outside the marketing area for other than fluid purposes. The evidence submitted concerning those various proposals was little more than exploratory in nature and does not constitute an adequate basis for determining pre-cisely what changes, if any, should be made in the amount or application of the fluid skim differential.

"Several exceptions were filed to the failure to recommend amendment of the order to make the fluid skim differential applicable to skim milk for certain fluid uses outside the marketing area. In the interest of clarification, it is pointed out that failure to make such amendment is due to the absence in the record of sufficient evidence rather than on a conclusion that the evidence definitely shows such amendment to be without merit. Accordingly, the exceptions are denied.

"Company proposals relating to the plant with which classification of skim milk would be determined for purposes of application of the fluid skim differential were also contained in the hearing notice but their adoption is unnecessary unless the fluid skim differential is applied to fluid skim utilization outside the marketing area." Docket No. AO–71A–24.